1079

Roy T. MEDLIN, Respondent v. Virginia H. Medlin KING, Appellant.
(365 S. E. (2d) 36)

Court of Appeals

*William I. Bouton* and *Todd M. Ackley*, Greenville, *for appellant.*

*Gregg F. Jones*, Williamston, *for respondent.*

Heard Dec. 8, 1987.

Decided Jan. 25, 1988.

GARDNER, Judge:

Virginia Medlin King (King) appeals an order of the Family Court relieving her former husband Roy T. Medlin (Medlin) of all support obligations to her and denying her attorney fees. We affirm.

King and Medlin married in April 1982. In March 1985, they separated. In October 1985, they entered into an agreement whereby they "agreed on a settlement of their respective financial and property rights and all other respective rights, remedies, privileges and obligations to each other, arising out of the marriage. . . ." An attorney representing King drafted the agreement. The agreement provided that it could be changed only in writing and that neither party would seek relief inconsistent with its terms.

The provisions of the agreement pertinent to this appeal are as follows:

> 4. That the husband waives his right to any claim that he may have against the wife for *alimony*.
> 5. That the husband is to pay *support* directly to the wife in the amount of Twenty-five and no/100 ($25.00) Dollars per week and that such payments have already begun. Should husband become delinquent in these payments, the wife can require that the payments be made through the Family Court of Greenville County upon affidavit to the Court. Husband agrees to make the Fifty-eight Dollar ($58.00) furniture payment until the debt is paid in full. [Emphasis ours.]

The parties divorced December 18, 1985; the agreement was incorporated into the divorce decree. No appeal was taken. King remarried December 23, 1985. Several months later, Medlin petitioned the Family Court to terminate the support obligation on the basis of King's remarriage. King counterclaimed for enforcement of the agreement and attorney fees.

King's exceptions present three issues of merit which are (1) whether the doctrine of res judicata forecloses Medlin's right to bring this action, (2) whether the agreement was an unmodifiable property settlement beyond the jurisdiction of the family court and (3) whether the word "support" used in the context of the agreement is in fact alimony.

King's first argument that the doctrine of res judicata forecloses the family court from modifying the agreement is untenable. In the case of *Moseley v. Mosier*, 279 S. C. 348, 353, 306 S. E. (2d) 624, 627 (1983), which pre-dated the agreement at issue, our Supreme Court held that "unless an agreement unambiguously denies the [family] court jurisdiction, the terms [of a separation agreement] will be modifiable by the court and enforceable by contempt." This argument, is therefore, rejected. And we so hold.

King vigorously argues that the word "support" in the context used is not synonymous with alimony and for that reason the agreement is an unmodifiable contractual agreement. We disagree. The word "support" is clearly designated as spousal support in the agreement.[1] In determining if a contract for spousal support is alimony, courts now tend to emphasize the nature of the obligation rather than how the obligation is designated. As stated in 24 Am. Jur. (2d) *Divorce and Separation*, Section 520 (1983):

> The term "alimony" generally has come to include a judicial grant of support to a dependent spouse, both during legal separation and on absolute divorce. The primary signification of the word is that of provision of support of a spouse. Alimony has for its sole object the provision of food, clothing, habitation, and other necessaries for support of a spouse. *Consequently, every provision in a judgment of divorce or separation made solely for this purpose is to be regarded as alimony, whether expressly designated as such or not,* and irrespective whether it requires payment of money at intervals or in a gross sum. [Emphasis ours.]

From the above we conclude that spousal "support" and "alimony" are synonymous. *Ward v. Ward*, 104 Ohio App. 105, 140 N. E. (2d) 906 (1956). South Carolina cases also

---

[1] There was testimony to the effect that the support payments were intended as repayment of loans King made to Medlin before they married and that the payments were also intended to benefit King's child from a previous marriage, for whom Medlin had no legal responsibility. No exception, however, raised these issues, nor did King address either argument in her brief.

recognize that alimony is essentially support. *See Lide v. Lide,* 277 S. C. 155, 157, 283 S. E. (2d) 832, 833 (1981) ("Alimony is a substitute for support which is normally incident to the marital relationship. . . ."). Nothing in the agreement before us indicates the parties intended the support payments to represent anything besides alimony.

Because the agreement unambiguously provided for periodic alimony, that provision remained subject to subsequent modification by the Family Court upon a showing of altered circumstances. *Brown v. Brown,* 278 S. C. 43, 292 S. E. (2d) 297 (1982); *Darden v. Witham,* 258 S. C. 380, 188 S. E. (2d) 776 (1972). By law an award of periodic alimony normally ceases upon remarriage of the supported spouse. *See* Section 20-3-150, Code of Laws of South Carolina (1976) ("[I]n the event of the remarriage of the supported spouse the amount fixed in such decree for his or her support shall forthwith cease and no further alimony payments shall be required from such supporting spouse."). In cases where alimony continues after the supported spouse remarries, the alimony award generally has been based on a contract specifically requiring that the payments continue regardless of the supported spouse's remarriage as in *Darden v. Witham, supra. Cf. Vance v. Vance,* 287 S. C. 615, 340 S. E. (2d) 554 (Ct. App. 1986) (holding that supported spouse's living with another without the benefit of marriage justified reduction in alimony). Contrary to King's argument, then, it was her responsibility, not Medlin's, to include a provision in the agreement about the effect of her remarriage on the support payments.

We further hold that the Family Court properly denied King attorney fees. Although King testified about her limited means, the Family Court, in determining if attorney fees were warranted, was free to consider additional factors, including most notably the result obtained. *O'Neill v. O'Neill,* 293 S. C. 112, 359 S. E. (2d) 68 (Ct. App. 1987). Since King has not prevailed at trial or on appeal, we hold the Family Court did not abuse its discretion in denying her attorney fees.

We find no merit in King's other exceptions.

Affirmed.

SANDERS, C. J. and GOOLSBY, J., concur.