1669

Charles E. CROOM, Jr., Respondent-Appellant v. Theodosia S. CROOM, Appellant-Respondent.

(406 S.E. (2d) 381)

Court of Appeals

*Peter M. Perrill*, Rock Hill, *for appellant-respondent.*

*Tony M. Jones*, of *Elrod & Jones*, Rock Hill, *for respondent-appellant.*

Heard March 18, 1991; Decided June 10, 1991.

Rehearing Denied Aug. 5, 1991.

*Per Curiam:*

Charles E. Croom, Jr., commenced this action to terminate or reduce alimony payments to his former wife, Theodosia S. Croom. The family court refused to terminate alimony, but did reduce it, based on a finding of changed circumstances. Theodosia appeals the reduction of alimony. Charles cross appeals the refusal to terminate alimony. We affirm in part and reverse in part.

On July 1, 1986, Charles and Theodosia entered into an integrated property settlement and support agreement incident to a marital separation. The agreement was drafted by Charles's lawyer. The agreement recited that the parties had agreed to live separate and apart. They both agreed that either might date and that neither would bring a divorce action against the other upon the ground of adultery. The agreement provided for a division of certain property of the marriage. It further provided that Charles would pay Theodosia $25,000.00 a year in alimony, terminable upon his death or her death or remarriage. Alimony was to be periodically increased or decreased in proportion to changes in the Cost of Living Index. The agreement specified that it would be submitted to the Family Court of York County to be approved by the court and merged into an appropriate judicial order. The agreement finally provided that the terms and conditions of the agreement and any court order approving it "shall not be modifiable by the parties or any court without written consent of the Husband and Wife."

By an order of the family court filed July 3, 1986, the agreement was approved and adopted as the order of the court. With the written consent of Charles and Theodosia, the court filed a second order on November 14, 1986, adopting a further agreement completing the division of the marital property. This second agreement and order did not affect the provisions concerning alimony. It, like the first agreement and order, stated that the agreement and order were not modifiable by the parties or any court without written consent of the Husband and Wife.

Charles and Theodosia were divorced in May, 1987. Soon after the divorce, Theodosia began living with a paramour. She continued to receive alimony payments from Charles. In April, 1988, financial difficulties forced Charles to file personal and business bankruptcies.

In July, 1988, Charles commenced this action seeking termination or reduction of alimony payments to Theodosia. The ground for termination was that Theodosia was admittedly cohabiting with a man to whom she was not married and was supporting him, at least in part, with the alimony she received from Charles. The ground for reduction was that the financial circumstances of the parties had substantially changed warranting a modification of alimony.

## I.

In this case, there was evidence that Theodosia and her paramour decided not to marry so that she would continue to receive alimony from Charles. South Carolina has not decided whether alimony should be terminated on the sole ground that the supported spouse is not entitled to alimony if he or she chooses to live in a continuing illicit relationship rather than remarry.

Other courts have reasoned, however, that it is inequitable to allow the partners to the illicit relationship to benefit from alimony payments at the expense of the supporting ex-spouse by the simple expedient of choosing not to marry. The purpose of alimony is to provide the ex-spouse a substitute for the support which was incident to the former marital relationship. *Johnson v. Johnson*, 296 S.C. 289, 372 S.E. (2d) 107 (Ct. App. 1988). It is not awarded to support a live-in partnership between the supported ex-spouse and a third party. A rule requiring alimony to continue in these circumstances invidiously discriminates because it penalizes a divorced spouse for remarrying, but rewards one for cohabiting without benefit of marriage. Since the State has a compelling interest in promoting marriage and discouraging meretricious relationships, such a rule is also illogical and offensive to public policy. *See, e.g., Lowry v. Lowry*, 512 So. (2d) 1142 (Fla. Dist. Ct. App. 1987); *McRae v. McRae*, 381 So. (2d) 1052 (Miss. 1980); *McHann v. McHann*, 383 So. (2d) 823 (Miss. 1980); *Weseman v. Weseman*, 51 Or. App. 675, 626 P. (2d) 942 (1981).

In this case, however, the right to alimony was fixed by contract, not by an adjudication of the court. The parties provided that alimony could be terminated only upon the occurrence of one of three specified events: the death

of Charles, the death of Theodosia, or the remarriage of Theodosia. They also provided that the alimony provision could not be modified by the court without their written consent. The agreement itself shows that Charles and Theodosia contemplated that one of them might engage in a subsequent illicit relationship, since they agreed that neither would seek a divorce for adultery. Had they intended cohabitation to be a condition that would terminate alimony, they could have so provided in their agreement. We, therefore, affirm the judgment of the court denying termination of alimony. Our decision should not be so construed to suggest the law would reach a similar result in the case of court ordered alimony.

## II.

For a similar reason, we reverse the court's modification of the amount of alimony. South Carolina law permits the parties to an integrated property settlement and support agreement to agree that the amount of alimony may not ever be modified by the court. *Moseley v. Mosier*, 279 S.C. 348, 306 S.E. (2d) 624 (1983). They may also agree that the alimony stated in the agreement shall be judicially awarded, enforceable by the contempt powers of the family court, but not modifiable by the court. *Id.* Once the court approves such an agreement and merges it into a judicial order, it is binding on the parties and the court. *Id.*

In this case, because the alimony provision was plainly not subject to modification by the court, the judge erred in reducing alimony by reason of changed circumstances. *Darden v. Witham*, 258 S.C. 380, 390, 188 S.E. (2d) 776, 779 (1972).

Affirmed in part, reversed in part.