553 S.E.2d 493

**Timothy D. BRYSON, Appellant/Respondent,**

**v.**

**Kathryn B. BRYSON, Respondent/Appellant.**

**No. 3391.**

Court of Appeals of South Carolina.

Submitted Sept. 4, 2001.

Decided Oct. 1, 2001.

---

J. Mark Taylor, of Wilson, Moore, Taylor & Thomas, of West Columbia, for appellant/respondent.

Harry C. Wilson, Jr., of Lee, Erter, Wilson, Holler & Smith, of Sumter, for respondent/appellant.

GOOLSBY, Judge:

In this domestic action, Timothy Bryson appeals the family court's refusal to terminate his alimony obligation. Kathryn Bryson cross appeals the family court's order reducing Timothy's alimony obligation from $250 per month to $100 per month. We affirm in part and reverse in part.[1]

Timothy and Kathryn were married in 1961 and divorced in 1983. At the time of their divorce, the family court approved a settlement agreement providing for Timothy to pay alimony of $50 per month. By order dated October 25, 1985, the family court increased Timothy's alimony obligation to $250 per month.

In 1991, Timothy brought an action seeking to terminate alimony on the grounds that Kathryn was involved in a relationship with Roy Cagle, and that the relationship was tantamount to marriage.[2] At that time, Kathryn had been living with Cagle since approximately 1988. In an order dated February 10, 1992, the family court held the relationship was not one tantamount to a marriage but was one of "mutual financial assistance and companionship" and refused to terminate alimony. In an unpublished opinion dated August 2,

---

1. Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

2. *See Croom v. Croom*, 305 S.C. 158, 160, 406 S.E.2d 381, 382 (Ct. App.), *cert. denied* (Sept. 24, 1991) ("Since the State has a compelling interest in promoting marriage and discouraging meretricious relationships, such a rule [requiring alimony to continue when the supported spouse cohabits without marrying] is also illogical and offensive to public policy."); *cf.* H.R. 3823, introduced, read for the first time, and referred to the House Judiciary Committee on March 21, 2001 (providing alimony would be terminated upon the continued cohabitation of the supported spouse with a person in a relationship that is tantamount to marriage).

1993, this court upheld the family court's decision. The South Carolina Supreme Court denied certiorari on May 6, 1994.

On December 15, 1999, Timothy brought the present action alleging a change of circumstances warranting termination of alimony. In support of his argument, the following evidence was presented: (1) Kathryn and Cagle still resided together and had done so for the last twelve years; (2) they moved to Florida together; (3) they purchased a home together; (4) the home was jointly titled and a mortgage was taken out in both their names; (5) though they stayed in separate bedrooms within the home, they engaged in sexual relations; (6) they traveled together and stayed together when so doing; (7) Kathryn's grandchildren were allowed to call Cagle "Pa Pa"; and (8) Kathryn and Cagle signed a birthday card as "Grandma" and "Pa Pa."

The presiding family court judge opined the relationship between Kathryn and Cagle was tantamount to marriage, but ruled the 1991 action between the parties on the issue of alimony was the law of case. Accordingly, he reduced alimony but refused to terminate it.

## LAW/ANALYSIS

Questions concerning alimony rest with the sound discretion of the family court.[3] An abuse of discretion occurs when the decision is controlled by some error of law or is based on findings of fact that are without evidentiary support.[4]

Timothy first argues the family court erred in finding the law of the case prevented the termination of his alimony obligation. We agree.

"Changed conditions may warrant a modification or termination of alimony."[5] Thus, the doctrines of law of the case and res judicata do not apply to those family court

---

3. *Bannen v. Bannen*, 286 S.C. 24, 331 S.E.2d 379 (Ct.App.1985).

4. *McKnight v. McKnight*, 283 S.C. 540, 324 S.E.2d 91 (Ct.App.1984).

5. S.C.Code Ann. § 20–3–170 (1976).

actions that are modifiable based on changes in circumstances.[6] Accordingly, we find the family court erred in holding the law of the case precluded it from terminating Timothy's alimony obligation.

Timothy next argues his alimony obligation should have been terminated because Kathryn was involved in a relationship that was tantamount to marriage and thus constituted a substantial change in circumstances. We agree.

With regard to this issue, the family court found:

[W]ith regard to the question of whether the Defendant and her live-in companion are involved in a relationship tantamount to marriage, this Court has great difficulty. These parties have lived together now for approximately twelve years. While they have separate bedrooms, they occasionally share the same bedroom and occasionally engage in sexual intercourse. They visit the children of the Defendant regularly and when they stay overnight, they share the same bedroom. They take some trips together. The Defendant's grandchildren are permitted to call her mate "Pa Pa." The parties have bought a home together in Florida, and as previously indicated, share the expenses of this home. The Deed to this property contains a "survivorship clause." This Court is unable to conclude that this arrangement does not contain all the features attendant to a marriage. The difficulty is that the living together existed when the matter went to the Court of Appeals, it was just for a shorter period. The sharing of expenses was present. The periodic sharing of the bedroom was present, and occasional sexual intercourse was present, and the Court called it a relationship for mutual financial assistance and companionship. That, too, is part of a marriage. What is new, perhaps, is that they were not buying a home together.... And, of course, the relationship has gone on longer.

While this Court strongly holds the view that the nature of the relationship between the Defendant and her live-in

---

**6.** *See Medlin v. King* 294 S.C. 406, 365 S.E.2d 36 (Ct.App.1988) (rejecting the argument that res judicata bars subsequent actions to modify alimony).

companion has sufficient features and characteristics as to treat it as a marriage for purposes of terminating alimony, the law of the case in this particular is fixed.

It is clear from the family court's order that its decision not to terminate Timothy's alimony obligation was based solely upon its belief that it did not have the power to do so and not because it felt the circumstances did not warrant termination. As noted above, this was error.

■ In reviewing the record, we conclude termination of alimony is warranted. We find sufficient changed circumstances surrounding Kathryn and Cagle's relationship that make it tantamount to marriage.[7] First, the duration is significantly greater than it was in 1991, as the two have now been together for over 12 years. Second, Kathryn and Cagle moved to Florida and purchased a house together. Third, Kathryn and Cagle have continued to engage in sexual relations throughout their involvement. Finally, Kathryn's grandchildren have developed a relation with Cagle to the point they call him "Pa Pa." Accordingly, we hereby reverse the family court and order termination of Timothy's alimony obligation.

In view of our decision to terminate alimony, we do not address Kathryn's appeal of the family court's decision to reduce the payments.

**AFFIRMED IN PART, REVERSED IN PART.**

HUFF and STILWELL, JJ., concur.

---

**7.** This court has previously held that "[l]iving with another, whether it is with a live-in lover, a relative, or a platonic housemate, changes the wife's circumstances and alters her required financial support." *Vance v. Vance,* 287 S.C. 615, 617–18, 340 S.E.2d 554, 555 (Ct.App.1986).