586 S.E.2d 136

**John E. MILES, Appellant,**

v.

**Rachel M. MILES, Respondent.**

No. 3654.

Court of Appeals of South Carolina.

Heard April 7, 2003.

Decided June 16, 2003.

Withdrawn, Substituted and Refiled Aug. 22, 2003.

512

514

J. Leeds Barroll, IV, of Columbia, John O. McDougall, of Sumter, John S. Nichols, of Columbia, for Appellant.

J. Mark Taylor, of West Columbia, for Respondent.

STILWELL, J.:

John E. Miles ("Husband") brought this action seeking termination or, alternatively, reduction in his alimony obligation to Rachel M. Miles ("Wife"). The family court refused to terminate, but did reduce Husband's alimony obligation from $4,583 per month to $2,500 per month. Husband appeals. We affirm.

## BACKGROUND

The parties married in 1962 and divorced in 1995. As part of the divorce decree, the family court adopted a written agreement between the parties in which Husband agreed to pay Wife $4,583 in monthly alimony. The agreement further provided:

[T]he terms and conditions of this Agreement, and any Order approving the same, *shall not be modifiable by the parties or any Court without the written consent of Husband and Wife.* The parties specifically agree that the Family Court ... shall not have any jurisdiction to modify, supplement, terminate or amend this Agreement, or the rights and obligations of the parties. Nothing in this paragraph shall be construed to in any way prohibit the Family Court from the modification and/or termination of the alimony provisions of this Agreement as permitted pursuant to the law of the State of South Carolina.

On June 21, 2000, Husband brought this action against Wife seeking termination or reduction in his alimony due to a substantial change of circumstances. Husband alleged that Wife orally agreed to modify the parties' prior alimony agreement, and that Wife had entered into a relationship that was tantamount to marriage or was a common law marriage, such that alimony should be terminated.

Wife testified she had been involved in a relationship with Anthony Shepard since her divorce from Husband. Wife testified she and Shepard spend three to four nights a week together. Wife and Shepard often travel together and they maintain a joint traveling fund to which each contributes $150 per month. Wife described her relationship with Shepard as "close, personal, and emotional." Wife testified she did not consider herself married to Shepard, and denied she and Shepard had schemed to remain unmarried to avoid losing her alimony. Additionally, Wife testified she and Shepard maintain separate residences and checking accounts and do not have any joint investment or charge accounts. Wife did, however, make a one time loan to Shepard for $9,000, which Shepard repaid within a few days.

Wife testified Husband approached her in April of 1997 and discussed his intent to file an action to discontinue alimony based on her relationship with Shepard. Husband, who is an attorney, provided Wife copies of a published opinion from this court that involved termination of alimony based on the supported spouse's relationship with another party that was tantamount to marriage. According to Husband, Wife agreed at another meeting in January of 1998 that Husband could

terminate alimony after a two-year period. Wife testified similarly regarding the oral agreement, but the parties never reduced any modification to writing.

The family court ruled that circumstances did not warrant termination of alimony because Wife was not involved in a relationship with Shepard that was tantamount to marriage. The family court found the oral agreement regarding the termination of alimony was never reduced to writing and was not approved by the court, and therefore was not enforceable. The family court further found Husband's monthly income had dropped from $18,600 to $13,925 while his monthly expenses had increased. Citing this change, the family court reduced Husband's alimony obligation to $2,500 per month. The family court found neither party was entitled to an award of attorney fees. Husband appeals.

## STANDARD OF REVIEW

In appeals from the family court, this court may find facts in accordance with its own view of the preponderance of the evidence. *Rutherford v. Rutherford,* 307 S.C. 199, 204, 414 S.E.2d 157, 160 (1992); *Owens v. Owens,* 320 S.C. 543, 546, 466 S.E.2d 373, 375 (Ct.App.1996). However, this broad scope of review does not require us to disregard the family court's findings. *Stevenson v. Stevenson,* 276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981). Nor do we ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Cherry v. Thomasson,* 276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981).

## DISCUSSION

### I. Wife's Relationship with Shepard

Husband argues the family court erred in failing to terminate alimony based on Wife's relationship with Shepard because the relationship is tantamount to marriage. We disagree.

Changed conditions may warrant a modification or termination of alimony. S.C.Code Ann. § 20-3-170 (1985). "The purpose of alimony is to provide the ex-spouse a substi-

tute for the support which was incident to the former marital relationship." *Croom v. Croom*, 305 S.C. 158, 160, 406 S.E.2d 381, 382, (Ct.App.1991). Alimony "is not awarded to support a live-in partnership between the supported ex-spouse and a third party." *Id.* Thus, "[a] rule requiring alimony to continue in these circumstances invidiously discriminates because it penalizes a divorced spouse for remarrying, but rewards one for cohabitating without benefit of marriage." *Id.* Alimony may therefore be terminated when a supported ex-spouse is involved in a relationship tantamount to marriage. *Bryson v. Bryson*, 347 S.C. 221, 226, 553 S.E.2d 493, 496 (Ct.App.2001). Living with another, whether it is with a "live-in-lover, a relative, or a platonic housemate," changes the supported ex-spouse's circumstances and alters the need for financial support. *Vance v. Vance*, 287 S.C. 615, 618, 340 S.E.2d 554, 555 (Ct.App.1986).

Although Wife's open and notorious illicit relationship with Shepard may be viewed as immoral or at least contrary to generally accepted social mores, the question this court must answer does not concern morality but rather whether the relationship constituted a change of circumstance under the law warranting termination of alimony. We find it did not. In cases where our courts have found a change in circumstances based on a relationship tantamount to marriage, the supported ex-spouse has been involved in a relationship with another in which the parties have economically relied upon one another. *See Bryson*, 347 S.C. at 225, 553 S.E.2d at 496 (finding relationship was tantamount to marriage and thus constituted a substantial change in circumstance where supported ex-spouse and her live-in companion resided in the same home for twelve years, and purchased a home together); *Vance*, 287 S.C. at 617–18, 340 S.E.2d at 555 (finding relationship tantamount to marriage where ex-spouse had taken up residence with her companion, the parties had twice moved to accommodate one another's careers, and shared expenses).

Here, it is undisputed Wife and Shepard maintain separate residences. Wife and Shepard maintain separate banking and investment accounts. With the exception of the travel fund, there is no evidence Wife and Shepard have commingled any funds. Furthermore, neither Wife nor Shepard provides financial support to the other. Under these circumstances, we

find the family court correctly ruled that Wife's relationship with Shepard was not tantamount to marriage.

## II. Oral Modification

█ Additionally, Husband argues the trial court erred in concluding the parties did not validly agree to terminate Husband's alimony obligation after December 1999. We disagree.

The family court concluded the divorce decree and the parties' initial alimony agreement, which was incorporated in the decree, could not be orally modified by the parties. Husband contends the parties could orally modify the agreement without a written agreement or the family court's approval. The agreement reached between the parties and adopted by the family court in the final divorce decree, however, specifically provided that the agreement and any order approving the agreement "shall not be modified by the parties or any court without written consent of husband and wife."

█ "Where an agreement is clear and capable of legal construction, the court's only function is to interpret its lawful meaning and the intention of the parties as found within the agreement and give effect to it." *Ebert v. Ebert*, 320 S.C. 331, 338, 465 S.E.2d 121, 125 (Ct.App.1995). "Unambiguous marital agreements will be enforced according to their terms." *Heins v. Heins*, 344 S.C. 146, 158, 543 S.E.2d 224, 230 (Ct.App.2001). Here, the agreement unambiguously provided the parties could not modify the agreement without written consent of both parties. However, Husband cites *Sanchez v. Tilley*, 285 S.C. 449, 452, 330 S.E.2d 319, 320 (Ct.App.1985), for the proposition that a written contract may be orally modified despite a prohibition in the contract against oral modification.

In *Sanchez*, a party sought to have an oral agreement to reduce child support declared invalid because the parties' original written support agreement provided any modification had to be in writing. *Id.* Nothing in the *Sanchez* decision indicates the original support agreement was approved and adopted by the family court. By contrast, the Miles' original support agreement was approved by the family court and made a part of the divorce decree. In essence, Husband is

not just seeking to modify the parties' written agreement. Rather, he is trying to modify a written court order by oral agreement of the parties. It is axiomatic that parties cannot modify a court order. Accordingly, the family court properly rejected Husband's reliance on *Sanchez* and properly concluded that any oral agreement by the parties regarding the termination of alimony was not enforceable.

### III. Further Alimony Reduction

In the alternative, Husband argues the family court abused its discretion in failing to grant Husband a greater reduction in his support obligation. We disagree.

> Whenever [a spouse] . . . has been required to make his or her spouse any periodic payments of alimony and the circumstances of the parties or the financial ability of the spouse making the periodic payments shall have changed since the rendition of such judgment, either party may apply to the court which rendered the judgment for an order and judgment decreasing or increasing the amount of such alimony payments or terminating such payments. . . .

S.C.Code Ann. § 20-3-170 (1985). To justify modification or termination of an alimony award, the changes in circumstances must be substantial or material. *Thornton v. Thornton*, 328 S.C. 96, 111, 492 S.E.2d 86, 94 (1997). Many of the same considerations relevant to the initial setting of an alimony award may be applied in the modification context as well, including the parties' standard of living during the marriage, each party's earning capacity, and the supporting spouse's ability to continue to support the other spouse. *Kelley v. Kelley*, 324 S.C. 481, 486, 477 S.E.2d 727, 729 (Ct.App.1996).

The court carefully reviewed and contrasted the income, expenses and assets of the parties at the time of the divorce in 1995 and at the time of the hearing. In 1995, Husband gross monthly income was $18,100, with monthly expenses of $7,900. In 1999 and 2000, Husband's gross monthly income was less than $14,000 and his monthly expenses had increased to $11,648. In the original agreement incorporated into the court order, it was contemplated that Wife would be unemployed and therefore have no earned income. She has remained unemployed, but the court noted that the testimony of an expert revealed that Wife's estate was valued in 1995 at

$594,746, but had increased to the value of $648,624 at the time of the hearing. The court noted Wife showed monthly expenses of $4,310, but specifically found those expenses included $1,500 per month payments on a bank loan for which there were no records to verify that the payments were made on a monthly basis and that she had the financial resources to fully satisfy that loan. In light of Husband's income and Wife's monthly expenses, we find no error in the family court declining to reduce Husband's alimony obligation by a greater amount.

## IV. Attorney's Fees

Lastly, Husband contends the family court abused its discretion in failing to award him attorney fees and costs. We disagree.

The decision whether to award attorney fees is a matter within the family court's sound discretion and will not be overturned absent an abuse of discretion. *Stevenson v. Stevenson,* 295 S.C. 412, 415, 368 S.E.2d 901, 903 (1988). In determining whether to award attorney fees, the court should consider the parties' ability to pay their own fees, the beneficial results obtained by the attorney, the parties' respective financial conditions, and the effect of the fee on each party's standard of living. *E.D.M. v. T.A.M.,* 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992).

In the instant case, the family court properly considered the appropriate factors and concluded neither party was entitled to recover attorney fees. Although Husband successfully received a reduction in his alimony obligation, Husband was primarily seeking to terminate his alimony obligation based on either Wife's cohabitation with Shepard or the parties' oral agreement. Husband was not successful on either of these claims. Furthermore, Husband's substantial income is sufficient to enable him to compensate his attorney. We find no error in the family court's refusal to grant attorney fees to either party.

**AFFIRMED.**

HOWARD, J., and STROM, Acting Judge, concur.