602 S.E.2d 96

**Paul V. DEGENHART, Appellant,**

v.

**Debra V. BURRISS (f/k/a Debra V. Degenhart), Respondent.**

**No. 3856.**

Court of Appeals of South Carolina.

Heard June 24, 2004.

Decided Aug. 16, 2004.

498

J. Mark Taylor and M. Ronald McMahan, Jr., both of West Columbia, for Appellant.

Sandra R. Parise, of Columbia, for Respondent.

HEARN, C.J.

Paul V. Degenhart appeals a family court order denying his request for termination of alimony. We affirm.

## FACTS

Paul V. Degenhart and Debra V. Burriss were married in 1989. The couple separated and entered into a written separation agreement in August 1999. Following one year of separation, they were divorced. The final divorce order incorporated the written separation agreement verbatim. The section of this agreement pertaining to alimony reads as follows:

> Husband agrees to pay Wife alimony in the amount of $2,500.00 per month payable on the 1st day of each month beginning with the month of September, 1999 for a period of the earlier of seven years or upon the remarriage of Wife.

Under the heading "Modification and Binding Effect of Agreement," the agreement provides:

> The provisions of this AGREEMENT shall not be modified or changed except by mutual consent and agreement of the parties expressed in writing.

Prior to the couple's divorce, but after entering into the separation agreement, Wife met William R. Hall. The two began spending the night together on a regular basis in November 1999, and they continue to share an exclusive sexual relationship. Wife and Hall began cohabitating in a rental house in September 2000, around the time of Husband and Wife's divorce. One year later, Wife and Hall purchased a home. The house was jointly titled and mortgaged, and the two equally divided the down payment and the tax deduction for the mortgage interest. Additionally, they have taken

numerous vacations together. Despite their sexual relationship and cohabitation, Wife and Hall maintain separate bank accounts and do not hold themselves out to be married.

In August 2002, Husband initiated the underlying action for termination of his alimony obligation, based solely on the cohabitation of Wife and Hall. The family court denied his request, and Husband appeals.

## STANDARD OF REVIEW

■ Questions concerning alimony rest within the sound discretion of the family court judge whose conclusion will not be disturbed absent a showing of abuse of discretion. *Bryson v. Bryson,* 347 S.C. 221, 224, 553 S.E.2d 493, 495 (Ct.App. 2001); *Bannen v. Bannen,* 286 S.C. 24, 26, 331 S.E.2d 379, 380 (Ct.App.1985). "An abuse of discretion occurs when the decision is controlled by some error of law or is based on findings of fact that are without evidentiary support." *Bryson,* 347 S.C. at 224, 553 S.E.2d at 495; *McKnight v. McKnight,* 283 S.C. 540, 543, 324 S.E.2d 91, 93 (Ct.App.1984).

## LAW/ANALYSIS

■ Based on the terms of Husband and Wife's agreement and the law of alimony modification, the family court determined it did not have the authority to modify Husband's alimony obligation. We agree.

■ Section 20–3–130 of the South Carolina Code (Supp. 2003) outlines in great detail the nature of alimony awards under South Carolina law. Subsection (G) states in relevant part: "The parties may agree in writing if properly approved by the court to make the payment of alimony as set forth [in this statute] **nonmodifiable and not subject to subsequent modification by the court.**" S.C.Code Ann. § 20–3–130(G) (Supp.2003) (emphasis added). While the family court normally has the authority to modify alimony,[1] once an alimony

---

1. *See, e.g.,* S.C.Code Ann. § 20–3–170 (1985) (providing that changed conditions may warrant a modification of alimony); *Jeanes v. Jeanes,* 255 S.C. 161, 164–65, 177 S.E.2d 537, 538 (1970) (modifying alimony due to cohabitation *in a situation where the agreement did not specifically deny the court the authority to do so*).

agreement that specifically disallows modification is approved by the court and merged into a judicial order, it is binding on the parties and the court and is not subject to modification. *Moseley v. Mosier,* 279 S.C. 348, 353, 306 S.E.2d 624, 627 (1983) ("The parties may specifically agree that the amount of alimony may not ever be modified by the court. . . ."); *Croom v. Croom,* 305 S.C. 158, 161, 406 S.E.2d 381, 383 (Ct.App.1991).

In *Croom,* this court reversed the modification of an alimony obligation because the court-adopted alimony agreement provided "the terms and conditions of the agreement and **any court order approving it** 'shall not be modifiable by the parties **or any court** without written consent of the Husband and Wife.'" 305 S.C. at 159, 406 S.E.2d at 382 (emphasis added). Husband would have us find *Croom* inapposite to the case before us because this agreement lacks language specifically stating that the family court cannot modify the agreement. We disagree.

While this agreement does not expressly state that the family court *cannot* modify the agreement, it is clear and specific about how the agreement *can* be modified, that being "by mutual consent and agreement of the parties expressed in writing." Because the family court "must enforce an unambiguous contract according to its terms regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully," we see no reason to require "magic words" for an unambiguous agreement to gain efficacy. *Lindsay v. Lindsay,* 328 S.C. 329, 340, 491 S.E.2d 583, 589 (Ct.App.1997). The agreement here, by stating that its terms "shall not be modified or changed except by mutual consent," clearly denies the family court the jurisdiction to modify the agreement by its own authority or at the behest of only one of the parties. Therefore, it was properly enforced.

■ Husband also contends that recent case law and amendments to section 20–3–150 of the South Carolina Code may, in certain situations, trump the longstanding rule that alimony agreements can be made nonmodifiable by agreement of the parties. Again, we disagree.

■ In the case of *Bryson v. Bryson,* 347 S.C. 221, 224–25, 553 S.E.2d 493, 494 (Ct.App.2001), this court held certain relationships, although not legal marriages, could by their

nature constitute relationships "tantamount to marriage" and warrant alimony modification pursuant to section 20–3–170. *See also* S.C.Code Ann. § 20–3–170 (1985) (providing that changed circumstances may warrant a modification or termination of alimony). A substantial element of determining whether a relationship is tantamount to marriage is the cohabitation of the parties. *See Bryson,* 347 S.C. at 226 n. 7, 553 S.E.2d at 496 n. 7. Later amendments to section 20–3–150, further defining "cohabitation" as previously applied in *Bryson,* read as follows:

> [U]pon the remarriage **or continued cohabitation** of the supported spouse the amount fixed in the decree for his or her support shall cease, and no further alimony payments may be required from the supporting spouse.
>
> **For purposes of this subsection and unless otherwise agreed to in writing by the parties, "continued cohabitation" means the supported spouse resides with another person in a romantic relationship for a period of ninety or more consecutive days.**

(Emphasis added to relevant 2002 amendments.)

We first note that *Bryson* did not concern an alimony agreement with terms that made the agreement nonmodifiable by the family court and therefore is not specifically applicable to the case at bar. Nothing in this court's holding in *Bryson* changed the longstanding rule that parties could agree to make alimony nonmodifiable. *See Bryson,* 347 S.C. at 224–25, 553 S.E.2d at 495 ("Thus, the doctrines of law of the case and res judicata do not apply to those family court actions **that are modifiable** based on changes in circumstances.") (emphasis added). Furthermore, because "the legislature cannot create a statute which applies retroactively to divest vested rights," the 2002 amendments to section 20–3–150 have absolutely no bearing on Husband and Wife's agreement, which was incorporated into an order in 2000. *Russo v. Sutton,* 310 S.C. 200, 205 n. 5, 422 S.E.2d 750, 753 n. 5 (1992).

Accordingly, the order of the family court is

**AFFIRMED.**

STILWELL, J. and CURETON, A.J., concur.