626 S.E.2d 56

**Miller L. LOVE, Jr., Respondent,**

v.

**Ann B. LOVE, Appellant.**

**No. 4077.**

Court of Appeals of South Carolina.

Heard Dec. 7, 2005.

Decided Jan. 23, 2006.

494

Evander G. Jeffords, of Florence, and John S. Nichols, of Columbia, for Appellant.

J. Michael Taylor, of Columbia, and Joseph O. Burroughs, Jr., of Conway, for Respondent.

WILLIAMS, J.:

Ann B. Love (Wife) appeals a family court order terminating her former husband's alimony obligation. We affirm.

## FACTS

Miller L. Love, Jr., (Husband) and Wife married in Florence, South Carolina, on June 3, 1962. In January 1990, Wife was granted a divorce on the ground of adultery. The final divorce order incorporated a separation agreement entered into voluntarily by the parties. The agreement addressed all of the major issues arising from the marriage, including, but not limited to, custody, visitation, spousal support, and the division of marital property.

The parties agreed Husband would pay Wife $1,100 per month in alimony, an obligation which "shall end ... upon the Wife's remarriage or death, whichever occurs first." With the exception of the provisions concerning the division of marital property, the agreement provides:

The provisions of this Agreement ... shall be subject to the approval, confirmation and adoption of the Court, such that it becomes the Order of the Court and enforceable and modifiable as such.

In 1995, Wife petitioned the family court for a modification of the alimony agreement. Prior to a hearing on the matter, the parties agreed Husband's alimony obligation would increase by $600 per month, making the total monthly payment $1,700.

In 1995, Wife began dating Otis Goodwin, who had recently divorced his first wife. Approximately a year and a half later, Wife moved in with Goodwin into the home they share today. Goodwin testified that Wife pays him $200 per week for rent and her share of the utilities. Over the course of their relationship, Goodwin loaned Wife $8,000, which was repaid, and a partially outstanding business loan of $25,000. Wife is also a cardholder on Goodwin's American Express Account, although each pays his or her own portion of the credit card bill. Mr. Goodwin has authority to write checks on Wife's business's checking account. In 1997, Goodwin transferred to Wife a parcel of land in Surfside, South Carolina worth approximately $40,000 for the consideration of "$5.00 love and affection." Goodwin routinely attends holiday celebrations and special occasions with Wife's family and Wife's grandchildren refer to him with terms of affection such as "Grandpa O." Although both Wife and Goodwin openly admit the romantic nature of their relationship, they are not formally married, nor do they express plans of marrying in the future.

In 2003, Husband filed the present action, petitioning the court for further modification of the alimony agreement. Specifically, Husband alleged Wife's amorous relationship and seven-year cohabitation with Goodwin constituted grounds for termination, or at least a substantial reduction, of his alimony obligation. Husband averred that 2002 amendments to South Carolina Code Section 20–3–130(B)(1) (1976) prescribed this modification. Alternatively, he argued Wife's relationship was tantamount to marriage, warranting a termination of alimony as a significant change in circumstances under the common law of alimony.

The family court agreed with Husband and ordered the termination of alimony pursuant to both the recent statutory

amendments and a determination that Wife's relationship is "tantamount to marriage." This appeal followed.

## STANDARD OF REVIEW

In appeals from the family court, this court has authority to find the facts in accordance with our own view of the preponderance of the evidence. *Woodall v. Woodall,* 322 S.C. 7, 10, 471 S.E.2d 154, 157 (1996). This broad scope of review, however, does not require us to disregard the findings of the family court. *Stevenson v. Stevenson,* 276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981). We remain mindful that the family court judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Bowers v. Bowers,* 349 S.C. 85, 91, 561 S.E.2d 610, 613 (Ct.App.2002).

## DISCUSSION

Wife argues the family court erred in terminating Husband's alimony obligation because the family court lacked the authority to do so under both the law of this state and the terms of the agreement. We disagree.

In *Moseley v. Mosier,* 279 S.C. 348, 306 S.E.2d 624 (1983), our supreme court perspicuously held that the family court has the authority to modify alimony agreements "unless the agreement unambiguously denies the court jurisdiction" to do so. *Id.* at 352–53, 306 S.E.2d at 627; *see also Degenhart v. Burriss,* 360 S.C. 497, 500–01, 602 S.E.2d 96, 98 (Ct.App.2004); *Stoddard v. Riddle,* 362 S.C. 266, 268, 607 S.E.2d 97, 98 (Ct.App.2004). Not only does the present agreement fail to expressly deny the family court this authority, it definitively grants the court such in stating that its terms "shall be subject to the approval, confirmation and adoption of the Court, such that it becomes the Order of the Court and enforceable and modifiable as such." Accordingly, the family court had authority to modify the alimony in the present case.

Wife subtly concedes this point, a position due, no doubt, to the fact that she herself petitioned the court for an increase in alimony in 1995. Wife, however, would have us somehow distinguish between the power to *modify* alimony and the power to *terminate* alimony. We draw no such

distinction. Parties to a separation agreement may either agree to make alimony unmodifiable, or leave the issue within the traditional oversight of the family court. *See Moseley,* 279 S.C. at 352–53, 306 S.E.2d at 627. Should the parties agree to the latter, the family court may modify alimony to the same extent permissible in court-awarded alimony, a scope of authority which certainly includes the power to terminate payments based on substantial changes in the parties' circumstances. *See* S.C.Code Ann. § 20–3–170 (1976); *Bryson v. Bryson,* 347 S.C. 221, 224, 553 S.E.2d 493, 495 (Ct.App.2001) ("Changed conditions may warrant a modification or termination of alimony.").

Having concluded the family court possessed the authority to terminate alimony, we move to the issue of whether this authority was properly exercised in the present case. As a ground for termination, the family court concluded Wife's relationship with Goodwin was tantamount to marriage, constituting a substantial change in circumstances which warranted alimony termination. We affirm the family court's termination of alimony on this ground.[1]

"The purpose of alimony is to provide the ex-spouse a substitute for the support which was incident to the former marital relationship." *Croom v. Croom,* 305 S.C. 158, 160, 406 S.E.2d 381, 382 (Ct.App.1991). "Living with another, whether it is with a live-in lover, a relative, or a platonic housemate, changes [a person's] circumstances and alters [his or] her required financial support." *Vance v. Vance,* 287 S.C. 615, 618, 340 S.E.2d 554, 555 (Ct.App.1986). Because the State has "a compelling interest in promoting marriage and discouraging meretricious relationships," a rule allowing alimony to continue when the supported spouse cohabits without marrying is "illogical and offensive to public policy." *Croom,* 305 S.C. at 160, 406 S.E.2d at 382. Accordingly, courts will treat the relationship between a supported spouse and a third party as "tantamount to marriage" and terminate alimony when the

---

1. Because we affirm the family court on the ground Wife's relationship constitutes a change of circumstance warranting alimony termination, we need not address the statutory grounds for the family court's termination of alimony. *See I'On, L.L.C. v. Town of Mount Pleasant,* 338 S.C. 406, 418, 526 S.E.2d 716, 722 (2000) (holding an appellate court may affirm any ruling, order, or judgment upon any ground(s) appearing in the record on appeal).

two cohabitate for an extended period of time and some degree of economic reliance between them is established. *See, e.g., Bryson,* 347 S.C. at 225, 553 S.E.2d at 496; *Vance,* 287 S.C. at 617–18, 340 S.E.2d at 555.

Such a relationship is certainly established in the case at bar. Wife and Goodwin have cohabitated for over seven years. Despite their assertions to the contrary, the record reflects the pair share a substantial amount of expenses, be it in the form of loans, reduced rent, or gifts. The record also reflects the romantic nature of the party's relationship and the unmistakable connection between Goodwin and Wife's family. *See Bryson,* 347 S.C. at 226, 553 S.E.2d at 496 (considering the bonds between cohabitating partner and the alimony recipient's family in determining whether relationship was tantamount to marriage). We therefore affirm the family court's conclusion that Wife and Goodwin are in relationship that is tantamount to marriage. Accordingly, the family court's order terminating Wife's alimony is hereby

**AFFIRMED.**[2]

STILWELL and KITTREDGE, JJ., concur.

---

2. Because we affirm the result reached by the family court, we likewise affirm the family court's determination that neither party is entitled to attorney's fees. As Wife is clearly not the prevailing party in this action, the family court properly denied her request for fees. *See E.D.M. v. T.A.M.,* 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992) (holding that the result obtained in litigation is an important factor in the consideration of whether to grant a party attorney's fees).