494

699 S.E.2d 184

**Kevin Patrick KENNEDY, Sr., Appellant,**

v.

**Dawn KENNEDY, Respondent.**

**No. 4713.**

Court of Appeals of South Carolina.

Heard May 18, 2010.

Decided July 21, 2010.

496

Kenneth Philip Shabel, of Spartanburg, for Appellant.

J. Edwin McDonnell, of Spartanburg, for Respondent.

WILLIAMS, J.

In this appeal, Kevin Kennedy (Husband) contends the family court erred (1) in awarding Dawn Kennedy (Wife) permanent periodic alimony; (2) in dividing the parties' marital debts; and (3) in denying Husband's request for attorneys' fees. We affirm.

## FACTS

Husband and Wife married on July 28, 1990. They had one child, Luke Kennedy (Luke), during the course of their marriage, who was emancipated prior to the final hearing. The parties separated on November 28, 2006, when the police arrested Husband for criminal domestic violence for threatening to kill Wife. Husband filed for divorce on January 4, 2007, and Wife counterclaimed requesting a divorce on the grounds of physical cruelty and habitual drunkenness. Husband then amended his complaint, requesting a divorce on the grounds of adultery and seeking to bar Wife's claim for alimony. The family court subsequently allowed the parties to amend their pleadings to also request a divorce based on one-year's continuous separation.

At the final hearing on April 16, 2008, the family court received testimony from the parties and their witnesses regarding the discord in the parties' marriage; the allegations of substance abuse, physical abuse, and adultery; and the source of several debts acquired during the marriage, specifically

during the period of Husband's incarceration. In a separate order dated September 12, 2008, the family court granted the parties a divorce based on one-year's continuous separation. The family court ordered Husband to pay Wife $300 per month in alimony and divided the marital estate on a 50/50 basis with each party responsible for debt acquired in his or her name. The family court denied Husband's request for attorneys' fees, finding Wife did not have the financial ability to pay Husband's fees. This appeal followed.

## STANDARD OF REVIEW

On appeal from a family court order, this court has the authority to correct errors of law and find facts in accordance with its own view of the preponderance of the evidence. *E.D.M. v. T.A.M.*, 307 S.C. 471, 473, 415 S.E.2d 812, 814 (1992). When reviewing decisions of the family court, we are cognizant of the fact the family court had the opportunity to see the witnesses, hear "the testimony delivered from the stand, and had the benefit of that personal observance of and contact with the parties which is of peculiar value in arriving at a correct result in a case of this character." *DuBose v. DuBose*, 259 S.C. 418, 423, 192 S.E.2d 329, 331 (1972) (internal quotations and citations omitted).

## ISSUES ON APPEAL

Husband claims the family court erred on three grounds in its final order, namely the following: (1) its award of alimony to Wife; (2) its allocation of marital debt; and (3) its denial of attorneys' fees to Husband.

## LAW/ANALYSIS

### I. Alimony

Husband argues he presented clear evidence of Wife's adultery; thus, the family court erred in granting Wife alimony. Alternatively, if this court finds insufficient evidence exists to establish Wife's adultery, Husband contends the $300 alimony award is excessive in light of Husband's fixed income. We disagree.

■ Proof of adultery must be "clear and positive and the infidelity must be established by a clear preponderance of the evidence." *McLaurin v. McLaurin,* 294 S.C. 132, 133, 363 S.E.2d 110, 111 (Ct.App.1987) (internal quotations and citations omitted). When the evidence is conflicting and susceptible of different inferences, the family court has the duty of determining not only the law of the case, but the facts as well, because it had the benefit of observing the witnesses and determining how much credence to give each witness's testimony. *Anders v. Anders,* 285 S.C. 512, 514, 331 S.E.2d 340, 341 (1985).

Husband contends the clear preponderance of the evidence establishes Wife committed adultery. He points to three witnesses who testified at the final hearing regarding Wife's alleged adulterous relationship with Adam Jackson (Jackson). Two of the witnesses, Brittney and Adam Clark, stated Wife told them about her extramarital relationship. Husband's son from a prior marriage, Kevin Kennedy, Jr. (Kevin Jr.) testified he was in the parties' home during Husband's incarceration when he heard "stuff going on in the bedroom" and knocked on the parties' bedroom door. When Wife opened the door in her bathrobe, Kevin Jr. said he saw her paramour, Jackson, under the covers in the parties' bed.

Conversely, Wife denied engaging in an extramarital relationship and claimed she had no personal interaction with Jackson whatsoever. The parties' son, Luke, also testified at the final hearing about the allegations of his mother's adultery. He stated he was in the home the night Kevin Jr. claimed he witnessed Wife cheating on Husband and testified that Jackson was never in the home as Kevin Jr. claimed. Additionally, Wife's best friend, Patricia Diaz, stated she and Wife shared many intimate secrets and details of their personal lives over the course of their friendship, and Wife never told her she was having an affair. After hearing this testimony at the final hearing, the family court determined Wife had not committed adultery.

Based on this conflicting testimony, we believe the family court was in the best position to judge the witnesses' credibility and veracity on the issue of adultery, and thus, we find the family court did not abuse its discretion in denying Husband's

request for a divorce on the grounds of adultery. *See Cox v. Cox,* 296 S.C. 414, 415, 373 S.E.2d 694, 694 (Ct.App.1988) (finding when there is conflicting evidence as to whether a party committed adultery, the appellate court should not disregard the findings of the family court who saw and heard the witnesses and was in a better position to evaluate the witnesses' testimony).

■ Turning to Husband's argument regarding the excessiveness of the alimony award, we find the $300 monthly alimony award to be reasonable.

■ An award of alimony rests within the sound discretion of the family court and will not be disturbed absent an abuse of discretion. *Dearybury v. Dearybury,* 351 S.C. 278, 282, 569 S.E.2d 367, 369 (2002). In determining whether alimony is appropriate, we recognize "[t]he purpose of alimony is to provide the ex-spouse a substitute for the support which was incident to the former marital relationship." *Love v. Love,* 367 S.C. 493, 497, 626 S.E.2d 56, 58 (Ct.App.2006) (internal quotations and citations omitted). "Generally, alimony should place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage." *Craig v. Craig,* 365 S.C. 285, 292, 617 S.E.2d 359, 362 (2005) (internal citations omitted). Thus, "[i]t is the duty of the family court to make an alimony award that is fit, equitable, and just if the claim is well founded." *Allen v. Allen,* 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct.App.2001).

When awarding alimony, the family court considers the following factors: (1) duration of the marriage; (2) physical and emotional health of the parties; (3) educational background of the parties; (4) employment history and earning potential of the parties; (5) standard of living established during the marriage; (6) current and reasonably anticipated earnings of the parties; (7) current and reasonably anticipated expenses of the parties; (8) marital and nonmarital properties of the parties; (9) custody of children; (10) marital misconduct or fault; (11) tax consequences; (12) prior support obligations; and (13) other factors the court considers relevant. S.C.Code § 20-3-130(C) (Supp.2009). No one factor is dispositive. *Allen,* 347 S.C. at 184, 554 S.E.2d at 425.

In awarding Wife alimony, the family court properly considered these relevant statutory factors from section 20–3–130(C). Specifically, the court noted the following in finding Wife was entitled to alimony: the seventeen-year duration of the marriage; Husband's monthly income of $2,023 from long-term disability and social security as opposed to Wife's monthly income of $155 from food stamps; both parties' misconduct during the marriage, particularly their issues with alcohol and substance abuse; Husband's and Wife's health problems and the resulting effects on their ability to earn a living; both parties' training as skilled laborers and their past employments and current unemployment; and the marital and non-marital property of each party.

■ Currently, Wife's income from food stamps is inadequate to maintain her former standard of living or to pay her current monthly living expenses. *See Craig*, 365 S.C. at 292, 617 S.E.2d at 362 ("Generally, alimony should place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage."). Wife's son, sister, and niece testified that they are supporting Wife financially because she cannot pay her basic living expenses due to her unemployment and mental instability. Any reduction in Wife's alimony award at this time would be inequitable considering each party's current financial standing. Furthermore, the family court included a provision for modifying Husband's alimony obligation if Wife establishes her entitlement to social security benefits in her pending claim before the Social Security Administration. If Wife's financial circumstances improve, Husband has the ability to petition the family court for a modification of Wife's alimony entitlement. *See Serowski v. Serowski*, 381 S.C. 306, 314–15, 672 S.E.2d 589, 593–94 (Ct. App.2009) (finding wife's receipt of social security and annuity benefits improved her ability to meet her needs such that a modification, rather than a termination, of alimony was appropriate). Accordingly, we affirm the family court's decision to award Wife alimony.

## II. Credit Card Debt

■ Next, Husband argues the family court abused its discretion in failing to equitably divide the parties' credit card debt on a 50/50 basis because the debt at issue was accrued

during the parties' marriage and thus subject to equitable division. We disagree.

"Marital property" is defined as "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation. . . ." S.C.Code Ann. § 20–3–630(A) (Supp.2009) (formerly § 20–7–473 (Supp.2007)). For purposes of equitable distribution, a "marital debt" is a debt incurred for the joint benefit of the parties regardless of whether the parties are legally liable or whether one party is individually liable. *Hardy v. Hardy,* 311 S.C. 433, 436–37, 429 S.E.2d 811, 813 (Ct.App.1993).

Marital debt, like marital property, must be specifically identified and apportioned in equitable distribution. *Smith v. Smith,* 327 S.C. 448, 457, 486 S.E.2d 516, 520 (Ct.App.1997). In equitably dividing the marital estate, the family court must consider "liens and any other encumbrances upon the marital property, which themselves must be equitably divided, or upon the separate property of either of the parties, and any other existing debts incurred by the parties or either of them during the course of the marriage[.]" S.C.Code Ann. § 20–3–620(B)(13) (Supp.2009) (formerly § 20–7–472(13) (Supp.2007)). Section 20–3–620(B)(13) creates a rebuttable presumption that a debt of either spouse incurred prior to the beginning of marital litigation is a marital debt and must be factored in the totality of equitable apportionment. *Hickum v. Hickum,* 320 S.C. 97, 102, 463 S.E.2d 321, 324 (Ct.App.1995) (citing to former section 20–7–473). When the debt is incurred before marital litigation begins, the burden of proving a debt is nonmarital rests upon the party who makes such an assertion. *Id.* at 103, 463 S.E.2d at 324.

Husband testified at the final hearing that Kevin Jr. and Wife accumulated almost $16,000 in credit card debt while he was in jail. Husband stated that during his forty-day imprisonment, Wife and Kevin Jr. incurred over $9,000 on his GM card, over $5,500 on his Bank of America card, and over $1,200 on his Chase card. However, Husband later admitted that several of the charges on his Bank of America card were actually attributable to him, and "about half the bill [was his] and half of it [was] hers." Husband's son, Kevin Jr., stated Wife used these credit cards and also gave him permission to

use these credit cards for various purchases, including jewelry, DVD's, and a spoiler and rims for his car.

However, Wife contradicted this testimony, stating she never used the credit cards nor gave permission to Kevin Jr. to use the credit cards, and she believed Kevin Jr. should be responsible for paying off the debt instead of her. Wife admitted to writing several checks from Husband's checkbook to pay household expenses, but she stated the bank returned some of those checks because of insufficient funds, which she then had to repay herself.

 Because the majority of the credit card debt was acquired prior to marital litigation, Wife was required to rebut the presumption that those debts were marital in nature. *See Hardy,* 311 S.C. at 437, 429 S.E.2d at 813 (holding former section 20–7–472 creates a rebuttable presumption that a debt of either spouse incurred prior to marital litigation is a marital debt). In its order, the family court implicitly found the credit card debts were nonmarital, concluding that Kevin Jr., not Wife, was responsible for the charges on Husband's credit card. Kevin Jr.'s testimony demonstrates the majority of his purchases benefitted neither Husband nor Wife as is required for debt to be equitably apportioned. *See id.* ("'[A] 'marital debt' is debt incurred for the joint benefit of the parties. . . .'"). Moreover, Husband even admitted that approximately half of the debt on the Bank of America card was a result of post-incarceration expenditures, specifically Husband's food, liquor, and hotel room, which clearly were not expenditures that benefitted the marriage. *See Hickum,* 320 S.C. at 103, 463 S.E.2d at 324 (stating that if the family court finds that a spouse's debt was not made for marital purposes, it need not be factored into the court's equitable apportionment of the marital estate, and the family court may order payment by the spouse who created the debt for nonmarital purposes). In light of the conflicting testimony, we believe the family court was in a better position to observe the witnesses and assess their credibility in determining whether this debt was marital or nonmarital. *See Brown v. Brown,* 379 S.C. 271, 277, 665 S.E.2d 174, 178 (Ct.App.2008) (finding that when there is conflicting evidence, the family court has the duty of determining not only the law of the case, but the facts as well, because it has the opportunity to observe the witnesses and determine how much credence to give each witness's testimony). Ac-

cordingly, we discern no error in the family court's decision to hold Husband responsible for the repayment of the credit card debt.

### III. Attorneys' Fees

Husband argues if this court finds the family court erred in its ruling on alimony or the equitable division of debts, we should remand the issue of whether Husband is entitled to attorneys' fees. Our decision to affirm the family court on both of these issues disposes of Husband's argument regarding attorneys' fees. *See Whiteside v. Cherokee County Sch. Dist. No. One,* 311 S.C. 335, 340–41, 428 S.E.2d 886, 889 (1993) (stating appellate courts need not address remaining issues when resolution of prior issue is dispositive); *Haselden v. Haselden,* 347 S.C. 48, 65, 552 S.E.2d 329, 338 (Ct.App.2001) (finding one of the husband's arguments regarding attorneys' fees without merit when his argument to overturn the attorneys' fee award was based on his unsuccessful contention that the contempt ruling was in error).

## CONCLUSION

Based on the foregoing, the family court's decision is **AFFIRMED.**

SHORT and LOCKEMY, JJ., concur.