723 S.E.2d 235

**June T. FULLER, Appellant,**

v.

**James T. FULLER, Respondent.**

**No. 4931.**

Court of Appeals of South Carolina.

Heard Sept. 15, 2011.

Decided Jan. 25, 2012.

Kirby Rakes Mitchell, of Greenville, for Appellant.

Bruce Wyche Bannister, of Greenville, for Respondent.

HUFF, J.

In this domestic relations matter, June T. Fuller (Wife) appeals the decision of the family court judge reducing the monthly alimony obligation of James T. Fuller (Husband) from $1,200 to $250. Wife asserts the family court erred in focusing only on Husband's age in considering Husband's request to reduce alimony, excluding relevant evidence, and repeatedly mischaracterizing the issue as one of whether Husband would be required to return, or go to work. We reverse and remand.

## FACTUAL/PROCEDURAL BACKGROUND

Following a bifurcated hearing, the parties were divorced on June 23, 2004, and in March 2005, Husband was ordered to pay Wife alimony of $1,200 monthly, beginning on April 1, 2005. The present action was commenced on August 20, 2007, when Husband filed a motion for temporary relief seeking suspension of his alimony obligations while he was undergoing knee replacement surgery, or until a final hearing could be held to determine his long-term income potential. A temporary hearing was held, at which time Husband's alimony obligations were suspended until the matter could be heard on the merits.

On October 8, 2009, a final hearing was held on Husband's motion before Judge Johnson. At the start of the hearing, counsel for Husband indicated there was a matter concerning Husband's treating physician, Dr. Voss, which needed to be

addressed. He stated that Wife's attorney declined his request to admit the medical records of Dr. Voss to show Husband's ability to work, but he had been unable to depose Dr. Voss before the hearing because of Dr. Voss' schedule. He therefore sought to leave the record open for Dr. Voss' testimony. Wife's attorney objected to this. Judge Johnson asked how old Husband was. Upon hearing that Husband was 67 years old, Judge Johnson replied, "Well, I don't make 67 year-old men go to work." Judge Johnson then stated, "... if it's a question about me telling a 67 year-old man— whether his knees are good or bad, doesn't matter to me—that he's got to go out and get a job now, I'm not going to wait for the doctor to tell me his knees are bad if that's what it's all about." Judge Johnson continued, "I mean if it's all about whether his knees are good enough to send him out to get a job somewhere, I don't need the doctor." When counsel for Wife interjected that Husband had several surgeries, some of them prior to the divorce action which were taken into consideration when alimony was awarded, the judge stated, "I don't care," noting that being ordered to pay alimony at the age of sixty-two or sixty-three was different than being ordered to do so at the age of sixty-seven, and stating "I'm not going to tell somebody that's 67 you've got to go out and get a job." The judge therefore concluded he did not need Dr. Voss' testimony.

Husband took the stand and testified he was sixty-seven years old, and the last time he worked was on June 15, 2007. While being questioned in regard to his past work experience, the judge interrupted, stating, "I just want both of you attorneys to understand the man is 67 years old. In my opinion, he's old enough to be retired and doesn't need to be sent out to get a job. So I don't care what any (sic) kind of work he did when he was 40." At this time, counsel for Wife raised an objection based on the scope of Husband's pleading, asserting Husband based his pleading on having a temporary disability due to knee replacement surgery and requesting alimony be suspended during recuperation. Wife maintained whether Husband was of working age was not an issue before the court. Wife's counsel maintained that Husband wanted to proffer the testimony of Dr. Voss to say Husband was 100 percent disabled, but Wife disputed that claim and desired to

cross-examine the doctor on the issue. The judge replied, "[M]y position is when you're 67 years old you're disabled so— because I'm not going to make somebody go out and get a job when they're 67. That's all." The judge indicated, though Husband may have had "some temporary knee surgery that had him out of work," he was "going to deal with whatever the situation is now." At this point, Husband's attorney moved to amend his pleadings to conform to the facts that Husband has a permanent disability and is now 67 years old. The judge noted Wife was entitled to notice of a motion to amend pleadings, and again stated he was going to "deal with whatever the situation is now," exclaiming ". . . and you can appeal this because I don't care whether he's disabled or not, if he's 67, I'm not going to make him go out and get a job and you can appeal that to whatever court you want to appeal it to."

Husband resumed his testimony and testified he had undergone four knee surgeries and a back surgery, and stated that he was diabetic and required insulin shots. Husband's counsel noted that he had records to confirm Husband's testimony regarding his health issues, but he was not going to offer them in light of the court's comments about not making a sixty-seven year old go back to work. The judge again stated his position that he did not think the court should "order someone who is 67 years old to go get a job." Husband testified he did not have the ability to continue paying Wife alimony, and he asked the court to reduce his alimony obligation down to zero, retroactive to the day of his filing. On cross examination, Husband admitted he had actually retired in 2003, but was working when the final order on alimony came out in 2005. He acknowledged that Judge Jenkins found in the 2005 order that Husband was employed at Bi–Lo and was capable of continued employment at that time. Husband also agreed he did not appeal the alimony that was awarded in 2005, because he was capable of paying it then. He stated he did not anticipate he would have the knee surgery and diabetes problems, and he had not attempted to obtain a job because no one would hire him with his health problems.

Wife, who was sixty-six years old at the time of the hearing on this matter, testified her income was $829 a month, that she received this sum from social security, she had no other source of income, she now has a very low standard of living

whereas she used to live a "high life-style," and that she had been drawing food stamps for the past year. Wife stated she was disabled in 1991, having had her back fused from the waist down, and that she had open heart surgery in 1998. In 2006 she was in a bad car accident. She testified her health had further declined since the prior order, and that she now suffers from congestive heart failure, and she needs both knee and neck surgery. Wife hired a private investigator to prove that Husband was not disabled. During the hearing, Wife's attorney sought to play a video obtained through the private investigator. Husband stipulated the video would show Husband with a leaf blower, blowing off his deck. The family court judge stated he would allow a proffer of the video, but reiterated his position that he did not "care whether [Husband] can work or not." When asked by Wife's counsel if he would like to watch the video, the judge declined. In light of the court's ruling, Wife's attorney also proffered testimony concerning observations of Husband's physical abilities and substantial improvements he had made to his home. When Husband objected on relevancy and foundation grounds, the court noted the testimony was simply a proffer for appeal purposes.

On November 13, 2009, Judge Johnson issued his order finding Husband was sixty-two years old and had a monthly income of $4,500 when the previous order was set, but was sixty-seven years old and had a monthly income of $1,296 from social security at the time of the current order. Based on Husband's "continuing health problems and his advanced age," the judge found Husband established a substantial change in circumstances, entitling Husband to a reduction in his alimony obligation. The judge then stated as follows:

> The Court finds that a 67 year old is not required to return to work. The Court excluded testimony related to Husband's disability and his ability to work based on the Court's finding that 67 is a reasonable age for retirement. The Court finds the alimony obligation of Husband should be based on his actual income.

The judge then ordered Husband's alimony payments be reduced from $1,200 to $250 a month, retroactive to November 1, 2007.

## ISSUES

1. Whether the family court abused its discretion by focusing only on the age of Husband while considering Husband's request to reduce his alimony.

2. Whether the family court abused its discretion in excluding relevant evidence because of its error of law.

3. Whether the family court abused its discretion in repeatedly mischaracterizing the issue as one of whether Husband would be required to "return to work" or "go to work."

## STANDARD OF REVIEW

■ In appeals from the family court, the appellate court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011).

## LAW/ANALYSIS

■ Wife contends the family court's decision was controlled by an error of law because it improperly focused only on the age of Husband in reducing Husband's alimony obligation. She argues the family court ignored statutory requirements and case law in doing so. Wife points to the family court's written order wherein the court specifically found "that a 67 year old is not required to return to work," and "excluded testimony related to Husband's disability and his ability to work based on the Court's finding that 67 is a reasonable age for retirement." Wife further points to the numerous instances in the transcript of the hearing wherein the court repeatedly indicated a sixty-seven-year-old man should not have to work, clearly showing the improper focus on Husband's age by the court. She asserts the family court judge was required to consider the totality of the facts and circumstances as outlined in statutory and case law and asserts, while Husband's age may be one relevant factor, the family court judge erred in failing to consider other relevant factors.

Wife further argues: (1) Husband's age and proximity to possible retirement age was within the contemplation of the parties at the time alimony was originally ordered, and therefore, the family court erred in focusing only on Husband's age

of sixty-seven in deciding to drastically reduce his alimony; (2) South Carolina statutory and case law require a consideration of Husband's financial ability, and not just "actual income" when assessing a modification request, that financial ability is not determined solely based upon one's age, and the family court judge's focus on Husband's age led it to ignore Husband's earning potential; and (3) Husband's age was not the only changed circumstance the family court judge was required to consider, noting the parties' standard of living during the marriage, each parties' earning capacity, and the supporting spouse's ability to continue to support the payee spouse were relevant factors that should have been considered, as well as other factors, such as Wife's disability and the fact that Wife, who was sixty-six at the time of the alimony reduction hearing, had aged the exact same amount as Husband and was also at an advanced age.

Wife also contends the family court judge improperly excluded testimony concerning Husband's disability and his ability to work. She points to the family court judge's order wherein he specifically stated that he had excluded this evidence, as well as to portions of the record showing exclusion of: (1) testimony of Dr. Voss; (2) records regarding Husband's health issues; (3) the video made by Wife's private investigator; and (4) Wife's testimony concerning Husband's ability to work. She argues the family court excluded this evidence *sua sponte*, and the exclusion of this evidence violated the section 20–3–170 requirement that the court give "both parties an opportunity to be heard and introduce evidence relevant to the issue."

 Section 20–3–170 of the South Carolina Code provides in pertinent part as follows:

Whenever any husband or wife, pursuant to a judgment of divorce from the bonds of matrimony, has been required to make his or her spouse any periodic payments of alimony and *the circumstances of the parties or the financial ability of the spouse making the periodic payments shall have changed* since the rendition of such judgment, either party may apply to the court which rendered the judgment for an order and judgment decreasing or increasing the amount of such alimony payments or terminating such payments and

the court, *after giving both parties an opportunity to be heard and to introduce evidence relevant to the issue,* shall make such order and judgment as justice and equity shall require, *with due regard to the changed circumstances and the financial ability of the supporting spouse,* decreasing or increasing or confirming the amount of alimony provided for in such original judgment or terminating such payments.

S.C.Code Ann. § 20-3-170 (1985) (emphasis added). "Once a court sets the amount of periodic alimony, that amount may be modified under the guidelines of S.C.Code Ann. § 20-3-170 (1985)." *Sharps v. Sharps,* 342 S.C. 71, 75, 535 S.E.2d 913, 916 (2000). To justify modification of an alimony award, the changes in circumstances must be substantial or material. *Id.* at 76, 535 S.E.2d at 916. Moreover, the change in circumstances must be unanticipated, and the party seeking modification has the burden to show by a preponderance of the evidence that an unforeseen change has occurred. *Butler v. Butler,* 385 S.C. 328, 336, 684 S.E.2d 191, 195 (Ct.App.2009). "As a general rule, a court hearing an application for a change in alimony should look not only to see if the substantial change was contemplated by the parties, but most importantly whether the amount of alimony in the original decree reflects the expectation of that future occurrence." *Sharps,* 342 S.C. at 78, 535 S.E.2d at 917. "Many of the same considerations relevant to the initial setting of an alimony award may be applied in the modification context as well, including the parties' standard of living during the marriage, each party's earning capacity, and the supporting spouse's ability to continue to support the other spouse." *Miles v. Miles,* 355 S.C. 511, 519, 586 S.E.2d 136, 140 (Ct.App.2003).

 "[W]hen a payor spouse seeks to reduce support obligations based on his diminished income, a court should consider the payor spouse's earning capacity." *Gartside v. Gartside,* 383 S.C. 35, 44, 677 S.E.2d 621, 626 (Ct.App.2009). Where a payor spouse's actual income versus earning capacity is at issue, the court "must closely examine the payor spouse's good faith and reasonable explanation for the decreased income." *Id.* "However, a payor spouse can be found to be voluntarily underemployed even in the absence of a bad faith motivation." *Id.* at 45, 677 S.E.2d at 626.

Although there was a limited amount of evidence, aside from Husband's age, placed on the record, a thorough reading of the transcript reveals that the family court focused only on Husband's increased age. From the start of the hearing, the judge repeatedly indicated he was not concerned with whether Husband was disabled or was able to work, and considered Husband's age to be the deciding factor in reducing alimony. Moreover, the court specifically excluded evidence regarding Husband's ability or inability to work, and provided in its order that it did so based upon the court's finding that "67 is a reasonable age for retirement." We find that the court was required, pursuant to section 20-3-170, to consider whether "the circumstances of the parties or the financial ability of the spouse making the periodic payments" had changed. Further, our case law mandates the family court take into consideration "[m]any of the same considerations relevant to the initial setting of an alimony award" in deciding whether modification of an alimony award is proper. Here, the family court expressly considered only Husband's age, and failed to consider Husband's financial ability or other circumstances of the parties. Further, the family court judge failed to consider whether any change in circumstances was unanticipated, as is required to support alimony modification, or whether the amount of alimony in the original decree reflected the expectation of any change of circumstances. Finally, the family court judge expressly acknowledged that he excluded the relevant evidence concerning Husband's ability or inability to work, in contravention to the requirement of § 20-3-170 that the court give "both parties an opportunity to be heard and to introduce evidence relevant to the issue."

We decline to adopt a bright-line rule that, where the supporting spouse reaches a particular age, that age alone is sufficient to justify a reduction or termination of alimony. Rather, the court should consider all relevant evidence and determine whether there has been a substantial or material, unanticipated change in circumstances warranting a reduction in a supporting spouse's alimony obligation. Accordingly, we hold the family court committed an error of law by reducing Husband's alimony based solely on Husband's age, and reverse and remand this matter to the family court for reconsideration of the issue in a manner consistent with this court's

opinion. *See Callen v. Callen*, 365 S.C. 618, 623–24, 620 S.E.2d 59, 62 (2005) (declining to address the sufficiency of the evidence, because the family court's findings of fact were so tainted by errors of law as to require the appellate court to reverse the court's decision and remand the case for a new hearing).

As to Wife's argument that the family court judge abused his discretion in mischaracterizing the issue, we need not address this issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when disposition of a prior issue is dispositive).

For the foregoing reasons, the order of the family court judge is

**REVERSED AND REMANDED.**

PIEPER, J., concurs.

LOCKEMY, J. concurring.

While I concur in the majority decision to reverse and remand, I write separately to present the idea that once a party has retired at a particular age, that *may* constitute changed circumstances for purposes of modification of alimony.

Other jurisdictions have used an approach that I find relevant to the case at bar. *See, e.g., Pimm v. Pimm*, 601 So.2d 534 (Fla.1992); *Smith v. Smith*, 419 A.2d 1035 (Me.1980); *Silvan v. Sylvan*, 267 N.J.Super. 578, 632 A.2d 528 (Ct.App. Div.1993); *McFadden v. McFadden*, 386 Pa.Super. 506, 563 A.2d 180 (1989). In determining whether retirement at a particular age constitutes such changed circumstances as would justify a modification of alimony, I believe there are a variety of factors to consider. This court may analyze "the age gap between the parties; whether at the time of the initial alimony award any attention was given by the parties to the possibility of future retirement; whether the particular retirement was mandatory or voluntary; whether the particular retirement occurred earlier than might have been anticipated at the time alimony was awarded; and the financial impact of that retirement upon the respective financial positions of the

parties." *Silvan*, 632 A.2d at 530. It may also assess "the motivation which led to the decision to retire, i.e., was it reasonable under all the circumstances or motivated primarily by a desire to reduce the alimony of a former spouse." *Id.* This court may also wish to consider "the degree of control retained by the parties over the disbursement of their retirement income, e.g., the ability to defer receipt of some or all." *Id.* In addition, it may consider whether either spouse has transferred assets to others, thus reducing the amount available to meet their financial needs and obligations. *Id.* This list of factors is meant to be illustrative, not exhaustive.

One court put it aptly, stating, "[j]ust as a married couple may expect a reduction in income due to retirement, a divorced spouse cannot expect to receive the same high level of support after the supporting spouse retires." *In re Marriage of Reynolds*, 63 Cal.App.4th 1373, 74 Cal.Rptr.2d 636, 640 (1998) (holding that no one may be compelled to work after the usual retirement age of 65 in order to pay the same level of spousal support as when he was employed).

To give further support to the idea that retirement at a particular age could be sufficient to constitute a change of circumstances, I note Social Security is payable at its maximum level at age 65.[1] *See* 42 U.S.C. § 416(*l*)(1) (Supp.2011); *see also* 42 U.S.C. § 402(a) (2000). By setting this age limit, the United States government is acknowledging there is a time when a person should be able to reflect on the short year we call life, hear the fog horn of the reality that is fast approaching, and say, as in the *September Song:* "Oh the days dwindle down, to a precious few, September, November ..." Walter Huston, September Song (1938). Furthermore, the South Carolina legislature, similar to most other state legislatures, has enacted life expectancy tables which declare that a healthy male at the age of 67, as Husband is in this case, can expect to live only 15.37 more years—"September, November...." *See* S.C.Code Ann. § 19–1–150 (1985).

Governments, nationally and locally, enact mandatory retirement for certain professions based upon the age of a person, rather than based upon the number of years employed. For example, in South Carolina, judges cannot active-

---

1. Depending upon the birth year, this age may differ slightly.

ly serve past the age of 72, regardless of the number of years on the bench. S.C.Code Ann. § 9–8–60 (Supp.2010). In another example, regular commissioned officers in the military are required to retire at age sixty-two, with limited exceptions. 10 U.S.C. § 1251(a) (2006).

If our state and federal statutes, jurisprudence and popular culture recognize that advancing age in and of itself justifies limiting opportunities and obligations in life, why then should it not apply as a consideration in alimony reduction? Shall we deny those "precious few" days from September to December as a time of consummation of the non-pecuniary parts of existence? Archibald Rutledge [2] described it well when telling of an elderly man who had all the necessities and more life could provide. As will happen to many others, he lay one day on a bed, deathly ill, with all the medicine and manmade comforts at his side, "but he had small comfort in them. But the moonlight, and the hale fragrances, and the wild song of the bird—these brought peace to his heart." Archibald Rutledge, Life's Extras (Fleming H. Revell 1928). Because the luring and lucrative parts of life have caused one to ignore them for 65 years should justice deny the appreciation of life's extras for the few years that remain based on the physical ability to continue to work?

The family court thought not and found alimony should be restructured based on his reduced retirement income. I would agree with the family court decision but for the lack of a record as to what may have been agreed to or contemplated by the parties when the alimony determination was originally negotiated. It could be that Husband promised certain benefits even after 65.[3] Moreover, some or all of the above mentioned factors relating to retirement at a particular age may apply. Therefore, I would reverse and remand for that determination.

---

**2.** In 1934, Archibald Rutledge became South Carolina's first poet laureate. 1934 S.C. Acts 736; Joseph M. Flora, Southern Writers: A Biographical Dictionary 391 (Robert Bain et al. eds., Louisiana State University Press 1979).

**3.** Whether such an agreement would be against public policy has never been examined in this state.