790 S.E.2d 906

Wilfred Allen WOODS, Respondent,

v.

Etta Catherine WOODS, Appellant.

Appellate Case No. 2012–213719
Opinion No. 5430

Court of Appeals of South Carolina.

Heard May 12, 2015
Filed July 27, 2016
Rehearing Denied September 23, 2016

102

Jon Terry Clabaugh, Jr., of Columbia, for Appellant.

Michael P. O'Connell, of Stirling & O'Connell, of Mount Pleasant, for Respondent.

MCDONALD, J.:

In this appeal from family court, Appellant Etta Woods (Wife), argues the family court erred in (1) denying her motion to dismiss because the court lacked jurisdiction based on the parties' prior agreement; (2) reducing alimony from $8,000 to $4,000; (3) providing for an automatic decrease in alimony two years in the future; (4) granting Respondent Wilfred Woods's (Husband) motion to reconsider; and (5) failing to require Husband to pay any portion of her attorney's fees. We affirm in part and reverse in part.

**FACTS AND PROCEDURAL HISTORY**

Husband and Wife were married on August 4, 1973, and separated on or about October 25, 1997. By order filed in Barnwell County on June 2, 1999 (Divorce Decree), the couple divorced on the ground of one year's continuous separation. The parties' only child was already emancipated when the parties divorced.

The Divorce Decree approved and incorporated a property settlement agreement (Agreement) by which the parties resolved all issues arising from their marriage, including Husband's obligation to pay Wife permanent, periodic alimony of $8,000 per month. Section I of the Agreement is titled

"SPOUSAL SUPPORT" (Spousal Support Section). Paragraphs B and E of the Spousal Support Section, in relevant part, state as follows:

[Husband] shall pay directly to [Wife] the sum of [$8,000] per month, as and for permanent, periodic alimony, commencing June 1, 1999, and payable on the first of each month thereafter. The alimony payments provided for in this [A]greement shall be taxable to [Wife] for federal and state income tax purposes and deductible to [Husband]. These alimony payments shall terminate on the remarriage or death of [Wife] or upon the death of [Husband] ....

. . . .

The parties agree that this permanent, periodic alimony shall not be modifiable by [Husband] for a period of [three] years from the date of the approval of this Agreement so long as [Husband's] total gross income (as defined by the Internal Revenue Code, including but not limited to tax exempt income) is not less than [$500,000] per year. In the event that [Husband] conveys any of his interest in Gilliam & Associates, Inc., in any form, including but not limited to an acquisition, merger, recapitalization, restructure, or other transference or disposal in any fashion whatsoever which provides a benefit to [Husband] and which reduces his income to below [$500,000] per year, [Husband] acknowledges that this conveyance shall be subject to review by the Family Court for the Second Judicial Circuit for the purposes of a reduction of alimony.

Section XVIII of the Agreement is titled "APPROVAL, NON–MODIFICATION AND ENFORCEMENT OF AGREEMENT" (Approval, Non-modification and Enforcement Section). Section XVIII, paragraph D, provides, in relevant part:

It is the intent of the parties that the provisions of this Agreement shall govern all rights and obligations of the parties as well as all rights of modification; and, further, that the terms and conditions of this Agreement and any Order approving the same shall not be modifiable by the parties or any court without the written consent of the Husband and Wife. The parties specifically agree, except as set forth herein, that neither the Family Courts of the State

of South Carolina nor any other court shall have jurisdiction to modify, supplement, terminate, or amend this Agreement or the rights and responsibilities of the parties hereunder, except as to child support, custody and visitation, which the parties understand to be modifiable as a matter of law.

On December 2, 2010, Husband brought this action seeking a modification of his alimony obligation due to a changed circumstance—namely, an alleged substantial decrease in his income since the issuance of the Divorce Decree. Wife contended the family court lacked jurisdiction to modify alimony based on the terms of the parties' Agreement, arguing: (1) "the changed circumstance alleged by Husband was voluntary and intentionally created by him and did not constitute a valid changed circumstance justifying an alimony reduction," (2) "the court should consider Husband's earning capacity and assets for the purposes of any alimony modification," and (3) Wife should receive an "increase in alimony based on a change in circumstances, namely an alleged substantial increase in Husband's income or earning capacity and assets since the [Divorce Decree]."

On April 12, 2011, Wife moved to dismiss, asserting that the family court lacked subject matter jurisdiction to modify alimony based on the parties' agreement. The Honorable Dale Moore Gable heard the motion on June 13, 2011, and denied the motion from the bench.[1] However, Judge Gable's August 26, 2011 order expressly left review of the alimony modification issue to the judge presiding at the final hearing:

IT IS THEREFORE ORDERED AND DECREED THAT [Wife's] Motion to Dismiss is denied; However

IT IS FURTHER ORDER [sic] AND DECREED THAT that [sic] the Judge at the Final Hearing is not bound by this denial and after listening to testimony from the parties and witnesses may find that [Husband's] alimony obligation to [Wife] is, or is not, modifiable based upon a substantial change in circumstances.

---

1. Although the parties' briefs and paragraph two of Judge Gable's order state that the hearing on the motion to dismiss was held on July 13, 2011, the transcript of the hearing and the caption of Judge Gable's order set forth that the hearing was held on June 13, 2011.

Additionally, Judge Gable quoted section 1 of the Agreement, "SPOUSAL SUPPORT," and paragraph XVIII(D), finding both to be "unambiguous and clear." Trial was initially scheduled to begin on September 12, 2011, but was continued by order dated November 21, 2011. In this order, the family court provided that if the court "determines that a modification of the Defendant's[2] [sic] support obligations as set forth in the divorce decree is warranted, the [family court] shall have the discretion to make any adjustments retroactive to the date this trial was originally scheduled to commence (i.e. September 12, 2011)."

In February 2012, Husband amended his complaint based on alleged additional changed circumstances, including (1) a reduction in his income substantially below $500,000 per year, (2) the conveyance of his interest in the business Gilliam & Associates, Inc. (Gilliam & Associates), and (3) a decrease in Wife's expenses and her anticipated receipt of social security benefits. Husband also requested that any alimony reduction or termination be made "retroactive to the date of filing and at least retroactive to the date of the previously scheduled [f]inal [h]earing in September, 2011 . . . . " Wife amended her responsive pleading, again asserting the family court lacked jurisdiction to modify alimony based on the parties' Agreement. Wife argued the sale of Husband's interest in the business was "contemplated or anticipated" at the time of the divorce and as such did not constitute a changed circumstance justifying an alimony modification.

On August 7, 2012, the Honorable W. Thomas Sprott, Jr., heard pretrial motions, including Wife's motion to dismiss. That same day, Judge Sprott notified both parties that he would be denying Wife's motion to dismiss. Trial was held on August 8–10, 2012. By order filed November 30, 2012 (Final Order), Judge Sprott (1) denied Wife's motion to dismiss; (2) reduced Husband's permanent, periodic alimony obligation from $8,000 to $4,000 per month commencing November 1, 2012; (3) stated the alimony would be taxable to Wife and deductible by Husband for income tax purposes; (4) provided that alimony would be further reduced by the amount of social

2. The context of the order makes clear that the family court intended to reference Plaintiff's (Husband's) support obligations.

security benefits to which Wife would be entitled when she reaches age sixty-two even if she defers taking benefits at that time; and (5) required both parties to pay their own attorney fees and costs.[3]

On December 12, 2012, Husband served Wife via facsimile with a motion to reconsider, stating he had received written notice of the entry of the Final Order on December 3, 2012, and sought an order reducing alimony from $8,000 to $4,000 per month retroactively to September 2011 (when the case was initially scheduled to be tried).[4] On December 28, 2012, Wife served her notice of appeal challenging the Final Order and Interim Orders.

On January 14, 2013, the family court granted Husband's motion to reconsider. Husband had continuously paid Wife $8,000 monthly alimony from June 1999 through October 2012. In order to give effect to the retroactive reduction in alimony to September 12, 2011, the family court ordered Husband to start paying Wife reduced alimony of $2,000 monthly beginning on November 1, 2012, until Husband was fully reimbursed for the overpayments.

On January 23, 2013, Wife served a motion to reconsider the order granting Husband's motion to reconsider. On February 25, 2013, the family court allowed Wife to file a return to Husband's motion to reconsider and stayed the January 2013 order granting Husband's motion to reconsider. Wife filed a return to Husband's motion to reconsider on March 8, 2013. The parties filed a stipulation on September 26, 2013, regarding the fax transmission of Husband's motion to reconsider.

On September 4, 2013, this court remanded the case to the family court for the limited purpose of ruling on any pending motions that might affect the appeal, including the motions to reconsider. On October 28, 2013, the family court issued a

---

3. The family court issued two interim orders, both of which were filed on November 30, 2012 (Interim Orders). These Interim Orders reduced Husband's alimony payment to $4,000 per month for the months of November 2012 and December 2012 pending issuance of the Final Order.

4. Husband's motion to reconsider was served upon Wife by mail on December 19, 2012.

second order, granting Husband's motion to reconsider and vacating the January 2013 order.

On November 27, 2013, Wife served a notice of appeal challenging the October 2013 order granting Husband's motion to reconsider. On January 27, 2014, this appeal was consolidated with Wife's prior appeal of the Final Order and Interim Orders.[5]

## ISSUES ON APPEAL

I. Did the family court err in denying Wife's motion to dismiss because it lacked jurisdiction to modify alimony under the terms of the parties' agreements?

II. Did the family court err in reducing alimony or, alternatively, err in reducing alimony by one-half of the original award?

III. Did the family court abuse its discretion in providing for an automatic decrease in alimony nearly two and a half years in the future based on Wife's anticipated eligibility for social security benefits, when such was not requested in Husband's pleadings?

IV. Did the family court err in granting Husband's motion to reconsider, which was untimely served by mail but timely served by facsimile, and in granting relief, *sua sponte*, under Rule 60(b)(1), SCRCP, more than ten days after entry of the Final Order?

V. Did the family court err in failing to require Husband to pay or contribute to Wife's attorney's fees?

## STANDARD OF REVIEW

"The family court is a court of equity." *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). "Article V, § 5 of the South Carolina Constitution provides in relevant part that our appellate jurisdiction in cases of equity requires that we 'review the findings of fact as well as the law.'" *Id.* In appeals from the family court, appellate courts review factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011). "*De novo* review permits appellate

---

5. Wife's appeal of the Final Order and Interim Orders was held in abeyance pending the issuance of the order granting Husband's motion to reconsider.

court fact-finding, notwithstanding the presence of evidence supporting the [family] court's findings." *Lewis*, 392 S.C. at 390, 709 S.E.2d at 654–55. "However, this broad scope of review does not require [the appellate court] to disregard the findings of the family court." *Id.* at 384, 709 S.E.2d at 651 (quoting *Eason v. Eason*, 384 S.C. 473, 479, 682 S.E.2d 804, 807 (2009)).

## LAW/ANALYSIS

### I. Jurisdiction to Modify Alimony

■ Wife contends the parties' Agreement deprives the family court of subject matter jurisdiction to modify Husband's obligation to pay Wife $8,000 per month of permanent, periodic alimony.

■ South Carolina Code sections 20–3–130(B)(1) and 20–3–170 (2014) provide the family court subject matter jurisdiction to modify periodic alimony payments. Further, section 20–3–130(G) states in relevant part: "The parties may agree in writing if properly approved by the court to make the payment of alimony as set forth in items (1) through (6) of subsection (B) *nonmodifiable and not subject to subsequent modification by the court.*" S.C. Code Ann. § 20–3–130(G) (2014) (emphasis added). "While the family court normally has the authority to modify alimony, once an alimony agreement that specifically disallows modification is approved by the court and merged into a judicial order, it is binding on the parties and the court and is not subject to modification." *Degenhart v. Burriss*, 360 S.C. 497, 500–01, 602 S.E.2d 96, 97–98 (Ct. App. 2004); *Moseley v. Mosier*, 279 S.C. 348, 353, 306 S.E.2d 624, 627 (1983) ("The parties may specifically agree that the amount of alimony may not ever be modified by the court . . . ."); *Croom v. Croom*, 305 S.C. 158, 161, 406 S.E.2d 381, 383 (Ct. App. 1991).

In *Degenhart*, the parties executed a written separation agreement in 1999, which was incorporated into their divorce decree following a one-year separation. 360 S.C. at 499, 602 S.E.2d at 97. The agreement stated:

> Husband agrees to pay Wife alimony in the amount of $2,500.00 per month payable on the 1st day of each month beginning with the month of September, 1999 for a period of the earlier of seven years or upon the remarriage of Wife.

... The provisions of this [agreement] shall not be modified or changed except by mutual consent and agreement of the parties expressed in writing.

*Id.* The husband initiated an action for termination of his alimony obligation in 2002 based on the wife's cohabitation with another man. *Id.* at 500, 602 S.E.2d at 97. Based on the terms of the agreement and the law of alimony modification, the family court determined it did not have the authority to modify alimony. This court affirmed, holding:

While this agreement does not expressly state that the family court *cannot* modify the agreement, it is clear and specific about how the agreement *can* be modified, that being "by mutual consent and agreement of the parties expressed in writing." Because the family court "must enforce an unambiguous contract according to its terms regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully," we see no reason to require "magic words" for an unambiguous agreement to gain efficacy. *Lindsay v. Lindsay*, 328 S.C. 329, 340, 491 S.E.2d 583, 589 (Ct. App. 1997). The agreement here, by stating that its terms "shall not be modified or changed except by mutual consent," clearly denies the family court the jurisdiction to modify the agreement by its own authority or at the behest of only one of the parties. Therefore, it was properly enforced.

*Id.* at 501, 602 S.E.2d at 98.

In *Croom*, this court reversed the modification of an alimony obligation based on a finding of changed circumstances because a clause in the parties' court-approved agreement provided that "the terms and conditions of the agreement and any court order approving it shall not be modifiable by the parties or any court without the written consent of the Husband and Wife." 305 S.C. at 159, 406 S.E.2d at 382.

Wife contends that paragraph D of the Approval, Nonmodification and Enforcement Section of the Agreement deprives the family court of subject matter jurisdiction to modify Husband's obligation to pay Wife $8,000 monthly in permanent, periodic alimony pursuant to paragraph B of the Spousal Support Section of the Agreement. We disagree and find

paragraph E of the Spousal Support Section permits modification.

Unlike the non-modification provisions in *Croom* and *Degenhart*, it appears that paragraph E of the Spousal Support Section contemplates that alimony could be judicially modified in the future based on a change of circumstance, as long as a period of three years had passed since the family court approved the Agreement. Moreover, the Agreement provides that if Husband's annual total income falls below $500,000, alimony is modifiable even if the three-year period has not passed. Paragraph E goes on to state that if Husband conveys any of his interest in Gilliam & Associates "in any form ... whatsoever which provides a benefit to [Husband] and which reduces his income to below [$500,000] per year, [Husband] acknowledges that this conveyance shall be subject to review by the Family Court for the Second Judicial Circuit *for the purposes of a reduction of alimony*." (emphasis added). Therefore, we find the possibility of Husband's conveyance of Gilliam & Associates was anticipated by the parties as a potential means for modification of alimony, and the Agreement does not provide a time limitation within which Husband must seek modification if such a sale were to occur.

In 1999, when the family court approved the Agreement, Husband's total annual income was $1,541,081. When Husband filed for modification of alimony in 2010 (well after he disposed of his interest in Gilliam & Associates), his annual income was $83,204. The language of the Agreement demonstrates that what the parties anticipated—namely, that the parties agreed to the court's reconsideration of Husband's alimony obligation if Husband disposed of his interest in Gilliam & Associates and his annual income fell below $500,000—is exactly what occurred. Thus, we find the language of the agreement does not unambiguously deny the family court jurisdiction to modify alimony under such circumstances.

Furthermore, in section III of the Agreement, titled "[Equitable Apportionment]," sub-paragraph A.3 states that Husband agreed to pay Wife $735,000 within ninety days of the Agreement's approval as a portion of her equitable interest in the estate. The payment was to survive Wife's death. Sub-paragraph A.3 goes on to state, "[s]aid payment is not modifi-

able for any reason and is separate from and in addition to payments of alimony. The Family Court shall not have jurisdiction to modify or terminate this payment for any reason." The Agreement's language is clear and unambiguous that this particular payment could not be modified. Such language is absent from the Spousal Support Section, further demonstrating that the parties did not intend to make alimony forever non-modifiable. Accordingly, we affirm the family court's decision as to its jurisdiction to modify alimony.

## II. Reduction of Alimony

■ Wife further argues that even if the family court had jurisdiction to modify alimony, it erred in reducing alimony or, alternatively, erred in reducing alimony by one-half of the original award from $8,000 to $4,000 per month.

South Carolina Code section 20–3–170 provides, in pertinent part:

> Whenever any husband or wife, pursuant to a judgment of divorce from the bonds of matrimony, has been required to make his or her spouse any periodic payments of alimony and *the circumstances of the parties or the financial ability of the spouse making the periodic payments shall have changed* since the rendition of such judgment, either party may apply to the court which rendered the judgment for an order and judgment decreasing or increasing the amount of such alimony payments or terminating such payments and the court, after giving both parties an opportunity to be heard and to introduce evidence relevant to the issue, shall make such order and judgment as justice and equity shall require, *with due regard to the changed circumstances and the financial ability of the supporting spouse,* decreasing or increasing or confirming the amount of alimony provided for in such original judgment or terminating such payments. . . .

S.C. Code Ann. § 20–3–170(A) (2014) (emphases added). "Once a court sets the amount of periodic alimony, that amount may be modified under the guidelines of S.C. Code Ann. § 20–3–170 (1985)." *Fuller v. Fuller*, 397 S.C. 155, 163, 723 S.E.2d 235, 239 (Ct. App. 2012) (citing *Sharps v. Sharps*, 342 S.C. 71, 75, 535 S.E.2d 913, 916 (2000)). In *Fuller*, this court explained:

To justify modification of an alimony award, the changes in circumstances must be substantial or material. Moreover, the change in circumstances must be unanticipated, and the party seeking modification has the burden to show by a preponderance of the evidence that an unforeseen change has occurred. As a general rule, a court hearing an application for a change in alimony should look not only to see if the substantial change was contemplated by the parties, but most importantly whether the amount of alimony in the original decree reflects the expectation of that future occurrence. Many of the same considerations relevant to the initial setting of an alimony award may be applied in the modification context as well, including the parties' standard of living during the marriage, each party's earning capacity, and the supporting spouse's ability to continue to support the other spouse.

[W]hen a payor spouse seeks to reduce support obligations based on his diminished income, a court should consider the payor spouse's earning capacity. Where a payor spouse's actual income compared to his or her earning capacity is at issue, the court must closely examine the payor spouse's good faith and reasonable explanation for the decreased income. However, a payor spouse can be found to be voluntarily underemployed even in the absence of a bad faith motivation.

*Id.* (citations omitted).

In the case at bar, it is clear that Husband has had a substantial reduction in income since he sold his shares in Gilliam & Associates. However, we question whether this was really an "unanticipated" and "unforeseen change" based on the language of the Spousal Support Section of the Agreement (discussed above). *See Fuller,* 397 S.C. at 163, 723 S.E.2d at 239. From 1998 through 2008, alimony as a percentage of Husband's income has varied—6.80% of his income in 1998; 44.56% of his income in 2003; 5.23% of his income in 2006; 49.96% of his income in 2009; 177.85% of his income in 2010; and 208.37% of his income in 2011.

Husband claims he cannot continue to pay Wife $8,000 a month in alimony and meet his other financial obligations. Husband's most recent financial declaration shows his monthly

gross income is $16,070. His monthly payroll deductions are $568, so his net monthly income is $15,502. His monthly expenses total $22,026, which includes $8,000 for spousal support, a $5,282 residential mortgage payment, and $1,531 in taxes and insurance on his residence.

Wife was not working when the case was tried in 2012, and she had not worked for the previous twenty-three years. Wife attended Winthrop University for less than two years, where she majored in elementary education; she neither obtained her degree nor has she ever taught school. When Wife last worked as a secretary in 1989, computers were not common. She testified at trial that she is not computer savvy and does not have a personal email. In order to return to the workforce as a secretary, Wife would likely have to go back to school and receive additional training. However, Wife testified that she has not looked for a job since 1999. We, like the trial court, are concerned that $8,000 in alimony per month has served as a disincentive for Wife to improve her employment potential.

Excluding alimony, Wife's financial declaration showed $154 in gross monthly income from dividends and interest. Wife's financial advisor testified Wife could draw $1,322.63 per month from an annuity and that she was eligible to take distributions from her IRA; however, he advised her not to do so based on her life expectancy. If Wife received no alimony and liquidated her approximately $838,000 in assets,[6] she estimated the money would last approximately seven years at her current rate of a little over $5,000 in monthly expenses. Based on the originally agreed upon $8,000 per month in alimony, Wife's deductions reflected in her financial declaration (including taxes, health insurance, life and long-term care insurance, and retirement) totaled $3,151 per month, resulting in a net income of $5,003 per month. Wife testified that her expenses were $5,293 per month, including $550 per month for anticipated loan pay-

6. In its Final Order, the family court pointed out that Wife failed to include liquid assets of approximately $105,000 in life insurance cash value on her financial declaration. In Wife's appellate brief, she states that these funds were inadvertently omitted from the $733,374 total value of Wife's property listed on her financial declaration submitted at trial. The life insurance cash value appeared on her financial declaration dated August 18, 2010. Wife testified she was not trying to deceive the court and that the omission was an oversight, which was corroborated by her financial advisor.

ments on a new car to replace her 2003 Toyota 4–Runner that had 158,400 miles and needed major repairs, and a $626 payment for maintenance of her household.[7]

Based on the foregoing, we agree with Wife's argument that the family court abused its discretion in reducing alimony from $8,000 to $4,000. It is clear from the record, however, that Husband has had a substantial reduction in income since selling his shares in Gilliam & Associates. Thus, we find a reduction from $8000.00 to $6000.00 per month to be more appropriate based upon the circumstances of this case and the parties' respective financial positions. Such a reduction is fair and in keeping with the loss of income Husband established due to the sale of his company shares.

## III. Anticipated Eligibility for Social Security

Wife further argues that if the family court had jurisdiction to modify alimony, it abused its discretion in providing for an automatic decrease in alimony almost two and a half years in the future based on Wife's anticipated eligibility to receive social security benefits. Wife additionally contends Husband did not plead for a reduction of alimony on this ground. We find this issue is preserved; however, we agree that the family court erred in reducing alimony based on Wife's future anticipated benefits eligibility.

"It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review." *Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 330, 730 S.E.2d 282, 286 (2012) (citation omitted).

In his amended complaint, Husband alleged:

Additionally, [Wife] is or soon will be of age to draw down on her own retirements and she is or soon will be able to obtain Social Security, based on [Husband's] earnings, all of which will increase [Wife's] income, while at the same time, her expenses have reduced. [Husband] would further allege that, particularly combined with his substantial reduction in

---

7. Wife testified that $626 per month for household maintenance was higher than usual because she had to replace the roof, all of the windows, and several walls and had to have work done on her kitchen and a bathroom due to a mold and mildew problem.

income, these circumstances support a dramatic reduction (or even termination) in his alimony obligation and he would ask that this [c]ourt issue an Order allowing the same . . . .

In response, Wife filed an amended answer and counterclaims in which she denied these allegations. At trial, Husband testified and pled that in addition to asking for a reduction in alimony to $4,000 per month, he also wanted the judge to include in the Final Order that alimony would be reduced when Wife became eligible for social security. Wife's lawyer did not object to this testimony; however, he did cross-examine Husband about this request:

Q: Okay. Now, about done. Yesterday, you were asked by Mr. O'Connell how you wanted to see this case shake out, and you said reduce my alimony to [$4,000], less Social Security when [Wife] is able to get it; is that correct?

A: That was what I said.

Q: Okay. Social Security for either you or Cathy was on the books in a law back in 1999, wasn't it?

A: I don't know.

Q: Social Security has been around since the '40's, hadn't it?

A: Social Security has. I don't know about individual laws of Social Security, no.

Q: Okay. But if it was a law then, you're presumed to know it; wouldn't you agree?

A: No sir.

Wife introduced testimony at trial on the issue of the automatic reduction of her alimony based on the amount of social security she would be eligible to receive when she turned sixty-two. Wife was questioned by Husband's attorney and by her own attorney on the issue.

"Questions concerning alimony rest within the sound discretion of the family court judge whose conclusion will not be disturbed absent a showing of abuse of discretion." *Degenhart*, 360 S.C. at 500, 602 S.E.2d at 97 (citing *Bryson v. Bryson*, 347 S.C. 221, 224, 553 S.E.2d 493, 495 (Ct. App. 2001); *Bannen v. Bannen*, 286 S.C. 24, 26, 331 S.E.2d 379, 380 (Ct. App. 1985)). "An abuse of discretion occurs when the decision is controlled by some error of law or is based on findings of fact that are without evidentiary support." *Id.* at 500, 602 S.E.2d at 97

(citing *Bryson*, 347 S.C. at 224, 553 S.E.2d at 495; *McKnight v. McKnight*, 283 S.C. 540, 543, 324 S.E.2d 91, 93 (Ct. App. 1984)).

The Final Order provides:

According to his income projections, $200,277.71 is the maximum annual income [Husband] will have for the remainder of his life. In the year 2020, his projected income will be $150,996.18. Annual alimony of $48,000 is 32% of this 2020 income. His projected income for the year 2024 is $116,652. Alimony of $48,000 per year is 41% of this amount. Given these projections, this Court also believes it is appropriate that [Wife's] alimony should be further reduced by the amount of Social Security for which she will become eligible at age 62, without regard to whether [Wife] applies for or actually receives Social Security benefits. Reducing [Husband's] alimony by the amount of Social Security for which [Wife] will be eligible will ease the financial burden on [Husband]. For example, in 2024, if [Wife's] Social Security benefit is $11,000 per year, [Husband's] alimony obligation would be $36,900 per year. This would represent about 32% of his projected income instead of 41%. This adjustment is infinitely fair.

Wife cites several cases holding that it is error for the family court to order increases or decreases in alimony based on future events. In *Prince v. Prince*, 285 S.C. 203, 328 S.E.2d 664 (Ct. App. 1985), our court reversed the family court's automatic decrease in alimony, stating, "It is not known what conditions may exist in six or twelve months; future conditions could call for either an increase or a decrease in the award." *Id.* at 205, 328 S.E.2d at 666. In support of its holding, this court quoted *Shafer v. Shafer*, 283 S.C. 205, 320 S.E.2d 730 (Ct. App. 1984), in which a child support award providing for an automatic increase after one year was reversed: "By providing for an automatic increase in child support, the trial judge arbitrarily increased the amount of support without a showing of a change of conditions." *Prince*, 285 S.C. at 205, 328 S.E.2d at 665–66 (citing *Shafer*, 283 S.C. at 209, 320 S.E.2d at 733). Wife also cites *Sharps*, in which our supreme court held that "[b]ecause a court cannot always know what conditions will exist in the future, it would be arbitrary to automatically increase alimony or child support in the far

distant future based on the happening of anticipated events." 342 S.C. at 77, 535 S.E.2d at 916. While we acknowledge that these cases differ from the case at hand, they are helpful to our analysis.

Under the present law of the United States, citizens are able to collect Social Security at age sixty-two. This is not a highly speculative future event. Under the terms of the Final Order, even if Congress were to change the law to increase the age for Social Security eligibility, Wife's alimony would not decrease until she is actually eligible to collect Social Security.

■ Regardless, we find the family court abused its discretion in providing for an automatic decrease in alimony almost two and a half years in the future based on Wife's anticipated initial eligibility for social security benefits at age sixty-two. *See, e.g., Crossland v. Crossland*, 408 S.C. 443, 453, 759 S.E.2d 419, 424 (2014) (discussing social security benefits a spouse is actually receiving as opposed to "future, yet-unclaimed social security benefits").[8] We are further concerned that the family court based its decision on Husband's income projections and anticipated loss of income—factors already considered in the court's decision to reduce Husband's monthly alimony obligation.[9]

## IV. Rules 5(b)(1) and 60(b)(1), SCRCP

■ Wife further asserts that the family court erred in granting Husband's motion to reconsider because the motion was untimely served by mail and ineffectively served by facsimile. Specifically, Wife contends the family court erred in granting the motion sua sponte under Rule 60(b)(1), SCRCP, more than ten days after entry of the Final Order. We agree in part, but affirm in light of the parties' stipulation (discussed

---

8. Nothing in this opinion should be construed as prohibiting the family court from considering at an appropriate hearing any social security benefits Wife is actually receiving once she elects to receive such benefits.

9. Of additional concern is the family court's decision to reduce Husband's alimony obligation by the amount of social security benefits for which Wife would become *eligible* at age sixty-two, even if she chose to defer receiving these benefits beyond her initial eligibility date.

below) that Wife's counsel actually received the fax within the ten-day service period.

"A motion to alter or amend the judgment shall be served not later than 10 days after receipt of written notice of the entry of the order." Rule 59(e), SCRCP; *accord* Rule 52(b), SCRCP (similarly providing that a motion to amend a judgment must be made "not later than 10 days after receipt of written notice of entry of judgment . . . ."); *see also Diamond Jewelers, Inc. v. Naegele Outdoor Advert. Co.*, 290 S.C. 260, 349 S.E.2d 888 (1985) (requiring post-trial motions filed under Rules 52(b) and 59(e), SCRCP, to be served not later than ten days after receipt of notice of entry of the judgment).

> Whenever under these rules service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless service upon the party himself is ordered by the court. Service upon the attorney or upon a party shall be made by delivering a copy to him or by mailing it to him at his last known address or, if no address is known, by leaving it with the clerk of court. Delivery of a copy within this rule means: handing it to the attorney or to the party; or leaving it at his office with his clerk or other person in charge thereof; or, if there be no one in charge, leaving it in a conspicuous place therein; or, if the office is closed or the person to be served has no office, leaving a copy at his dwelling place or usual place of abode with some person of suitable age and discretion then residing therein. Service by mail is complete upon mailing of all pleadings and papers subsequent to service of the original summons and complaint.

Rule 5(b)(1), SCRCP.

The Final Order was filed on November 30, 2012. On December 12, 2012, Husband served Wife's counsel with a motion to reconsider via facsimile. In his motion, Husband asked the family court to retroactively reduce his monthly alimony in the amount of $4,000 to September 12, 2011 (the date that the original trial was scheduled to begin). On December 27, 2012, the family court sent instructions for an order granting Husband's motion to counsel for both parties via facsimile, and directed counsel for Husband to draft an order consistent with the instructions. Husband's counsel submitted

his proposed order via email to the family court and counsel for Wife on January 2, 2013. The court granted Husband's motion to reconsider by order signed on January 3, 2013, and filed on January 14, 2013.

On January 22, 2013, Wife filed a motion to reconsider, in which she asked the family court to alter, amend, modify, stay, vacate, or grant relief from its January 14, 2013 order. Wife asserted three grounds for the motion: (1) Husband's motion was untimely because it was not received by mail by the Wife until December 27, 2012, and therefore, was procedurally barred; (2) Husband's service by facsimile on December 12, 2012, was ineffective; and (3) Wife was not given an opportunity to be heard on Husband's motion. In support of her motion, counsel for Wife, H. Grady Brown (Brown), submitted an affidavit. In his affidavit, Brown stated "[Husband's] [m]otion initially was transmitted to me via facsimile on December 12, 2012 . . . ." Brown also stated that the motion to reconsider arrived by mail at his office on December 27, 2012. This information was also provided to the family court by way of stipulation on September 26, 2013. The parties stipulated, "To the best of [Brown's] recollection, he saw and reviewed the fax of [Husband's] [m]otion on December 12, 2012."

On February 2, 2013, Husband filed and served his return to Wife's January 23, 2013 motion. Husband asserted that his motion to reconsider was timely, effectively, and actually served and filed, and therefore, was not procedurally barred. On February 20, 2013, the family court issued an order allowing Wife to respond to Husband's motion and staying his January 14, 2013 order. Wife did so on March 4, 2013. Ultimately, the family court held that Husband believed he had timely delivered the motion in an appropriate manner, as he stamped the fax copy with the words "Certificate of Service", signed it, and dated it December 12, 2012.

In *Trowell v. South Carolina Department of Public Safety*, "this court declined to hold that the facsimile of an agency's final decision regarding an employee grievance constituted proper service for the purpose of initiating the time frame in which the employee had to file his appeal." *White v. S.C. Dep't of Health & Envtl. Control*, 392 S.C. 247, 253, 708 S.E.2d 812, 815 (Ct. App. 2011) (citing *Trowell*, 384 S.C. 232, 235–37, 681

S.E.2d 893, 895–96 (Ct. App. 2009)). In *Trowell*, Scott Trowell, a highway patrolman, was suspended without pay for forty hours and reassigned to a different patrol unit. *Trowell*, 384 S.C. at 233, 681 S.E.2d at 894. Trowell filed a grievance with the Department of Public Safety (the Department). *Id.* Notice of the Department's decision upholding the suspension was initially sent to Trowell's attorney by fax on February 2, 2005, with a notation indicating the decision would also be sent by certified mail. *Id.* at 234, 681 S.E.2d at 894. Trowell's attorney received the Department's decision by certified mail on February 7, 2005. *Id.* at 234, 681 S.E.2d at 894–95.

> Trowell's counsel admit[ted] the facsimile was received by his office on February 2; however, because facsimiles are not ordinarily used to accomplish notice of a decision by any department, agency, or court, counsel maintain[ed] he did not look at or consider the fax until the certified copy of the letter was received by his office on February 7, at which time he began the next step of the appeals process.

*Id.* at 237, 681 S.E.2d at 896. On February 15, 2005, Trowell's attorney faxed an appeal from the Department's decision to the Human Resource Management Division of the South Carolina Budget and Control Board (Human Resources). *Id.* at 234, 681 S.E.2d at 895. "On March 4, 2005, [the director of Human Resources] notified Trowell, via letter, that his appeal was untimely because Trowell had failed to file it within ten calendar days of receipt of [the Department's] February 2 facsimile, pursuant to section 8–17–330 of the South Carolina Code (Supp. 2008)." *Id.*

The *Trowell* court noted, "the agency's interpretation of its grievance procedure ... created a rule which it had, admittedly, never before employed or sought to enforce. Moreover, the rule that the time for an appeal began to toll upon service by facsimile is not included in any written materials or guidelines available to the public or the bar." *Id.* at 236–37, 681 S.E.2d at 896. This court further observed that the Department's decision "arbitrarily created a trap for the unwary petitioner. As a result, we believe the substantial rights of Trowell were prejudiced due to the arbitrary and capricious nature of the agency's interpretation of its grievance procedure." *Id.* at 237, 681 S.E.2d at 896.

In *Dill–Ball Company v. Bailey*, 103 S.C. 233, 87 S.E. 1010 (1916), a sheriff's agent placed suit papers in the defendant's

mailbox; the defendant's servant removed them and later handed them to the defendant. *Id.* at 1011. The defendant acknowledged to the sheriff that he had received the papers from his servant, and the sheriff told him what the papers were regarding. *Id.* Although there was no proper re-service, the court held that service was effective. *Id.*; *see also Humphries v. Spitz*, 284 S.C. 521, 523, 327 S.E.2d 370, 371 (Ct. App. 1985) (providing the same ruling, citing *Dill–Ball* as authority).

 Actual and timely service defeats any claim that service was not in accordance with the Rules. We note that Rule 5(b)(1), SCRCP, neither authorizes nor prohibits delivery of a written notice by facsimile. However, the crux of the Rule is for the movant to deliver a copy to opposing counsel. Here, the record, including Brown's affidavit and the parties' stipulation, reflects that Husband's motion was timely and actually received by Brown's office on December 12, 2012, within the meaning and intent of Rule 5(b)(1), SCRCP. Unlike the facts in *Trowell*, Wife's counsel did not claim that he took no action to oppose Husband's motion because he considered service by facsimile on December 12, 2012 to be ineffective. We believe that if Wife's counsel had considered the service by facsimile ineffective on December 12, 2012, he would have filed a motion with the family court when he received the court's instructions for its order on December 27, 2012, or when he received the proposed order on January 2, 2013. Wife's counsel made no complaint about untimely or improper service until filing her January 22nd motion.[10]

## V. Attorney's Fees

Wife argues the family court erred in failing to require Husband to pay or contribute toward her litigation fees and costs. We agree.

---

10. We agree with Wife that it was error for the family court to invoke Rule 60(b) on its own initiative. *See* Rule 60(b), SCRCP (stating that "*on motion* and upon such terms as are just" the court may relieve a party or its legal representative from a final judgment or order in certain limited situations) (emphasis added). However, the Rule 59(e) ruling— as well as the parties' stipulation that Wife's counsel "saw and reviewed" the faxed motion within the 10–day period—is dispositive on the timeliness question.

"In determining whether an attorney's fees should be awarded, the following factors should be considered: (1) the party's ability to pay his/her own attorney's fee; (2) the beneficial results obtained by the attorney; (3) the parties' respective financial conditions; and (4) the effect of the attorney's fees on each party's standard of living." *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992) (citation omitted). In determining the amount of reasonable attorney's fees, the family court should consider: "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; and (6) customary legal fees for similar services." *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

Here, both parties sought attorney's fees in their pleadings. At trial, counsel for Wife submitted an affidavit for attorney's fees incurred during the course of litigation. Pursuant to the affidavit, Wife incurred $64,670.71 in attorney's fees, which included an estimate of an additional forty-five hours for the fees and costs estimated to be incurred during the week of trial. Wife's counsel stated her hourly rate was $200, and she spent approximately 232 hours, with some time billed by her paralegal at seventy-five dollars per hour, defending Wife's case. In addition, Wife spent approximately $21,000 in out-of-pocket costs for depositions, appraisals, and other materials, and she paid $12,000 to a financial advisor expert who provided litigation support. Wife's fees and costs total approximately $97,670.

Notwithstanding the fact that Wife was awarded $2,000 in temporary attorney's fees in connection with a motion to reopen discovery filed by Husband, the family court ordered both parties to pay their own attorney's fees. The family court concluded that the attorney's fees incurred by each party were reasonable and necessary:

> This [c]ourt has reviewed the affidavits of counsel for both parties. They have documented their services adequately and it appears that the attorneys' fees both have requested are appropriate. The [c]ourt considered statutory and case law of the State, including but not limited to *Glasscock v. Glasscock* and *E.D.M. v. T.A.M.*, as well as the factors set

forth in the Code of Professional Responsibility. This [c]ourt approves the fees that both attorneys charged their clients. This [c]ourt has further reviewed documentation of the negotiations between the parties and their attempt to resolve this matter prior to [t]rial. They came very close to being able to resolve this matter without the necessity of litigation. It appears that litigation was necessary in this matter. It appears there is give and take by each party in their efforts to resolve this between themselves. Based on these findings [it] is appropriate for each party to assume their own legal fees and costs.

Although the weight of the beneficial results obtained initially weighed in Husband's favor, the parties' abilities to pay, their respective financial conditions, and the effect of attorney's fees on each party's standard of living supported Wife's fee application. We recognize that "the threshold question of entitlement [to fees] always turns, at least in part, on the beneficial results obtained." *Buist v. Buist*, 410 S.C. 569, 579, 766 S.E.2d 381, 386 (2014) (Pleicones, C.J., concurring). Where beneficial results are reversed on appeal, the attorney's fee award, or lack thereof, must also be reconsidered. *See Crossland*, 408 S.C. at 460, 759 S.E.2d at 428; *Rogers v. Rogers*, 343 S.C. 329, 540 S.E.2d 840 (2001) ("[S]ince the beneficial result obtained by counsel is a factor in awarding attorney's fees, when that result is reversed on appeal, the attorney's fee award must also be reconsidered.").

Rule 26(a), SCRFR, requires that "[a]n order or judgment pursuant to an adjudication in a domestic relations case shall set forth the specific findings of fact and conclusions of law to support the court's decision." Here, the family court's order does not satisfy Rule 26(a) and is insufficient to support its reason for declining to award Wife attorney's fees; however, we find it unnecessary to remand the fee question because the record is sufficient for this court to make its own findings. *See Holcombe v. Hardee*, 304 S.C. 522, 524, 405 S.E.2d 821, 822 (1991) ("[W]hen an Order is issued in violation of Rule 26(a), [an appellate court] may remand the matter to the trial court or, where the record is sufficient, make its own findings of fact in accordance with the preponderance of the evidence.").

Here, Husband was in a better financial position to pay his own attorney's fees and to contribute toward a substantial portion of Wife's fees. Husband's net worth increased from approximately $1 million at the time of the divorce to $3.3 to $3.4 million at the time of the alimony modification trial. During that same period, Wife's net worth decreased from approximately $1 million to $837,437, and she had redeemed a total of $86,651 from her investments to pay her litigation expenses. Husband also liquidated assets and drew from an equity line in the months prior to trial, both to pay his litigation costs and to retire certain debts. Of the $547,000 in this available cash, he retired some $300,000 in debt, including $150,000 in attorney's fees. There was no explanation regarding the expenditure of the remaining $247,000. Wife's financial declaration for trial reflected some $3,000 in her checking account, while Husband had a combined balance of over $26,000 in his checking accounts.

In light of the beneficial results obtained by Wife on appeal, the parties' respective financial conditions and abilities to pay their litigation expenses, as well as the effect that paying attorney's fees will have on each party's standard of living, we find it appropriate for Husband to pay $48,835.00 (one-half) of Wife's attorney's fees and costs.

## CONCLUSION

For the reasons set forth above, we affirm the family court's finding that it had jurisdiction to modify the alimony award, but we modify the family court's alimony reduction. We find a reduction from $8000.00 to $6000.00 per month to be appropriate based upon the circumstances of this case and the parties' respective financial positions. We reverse the automatic decrease in alimony based on Wife's anticipated initial eligibility for social security benefits at age sixty-two. Finally, we reverse the family court's decision as to attorney's fees, and find Husband shall contribute $48,835.00 toward payment of Wife's attorney's fees and costs.

Accordingly, the orders of the family court are **AFFIRMED IN PART** and **REVERSED IN PART**.

LOCKEMY, C.J., and SHORT, J., concur.